Keefer Estate.

Argued November 28, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*E. M. Biddle, Jr.,* for appellant.

*Frederick J. Templeton,* with him *Hilton A. Russell,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, January 7, 1946:

This is an appeal from the decree of the Orphans' Court of Cumberland County, dismissing exceptions to the First and Final Account of Hulda G. Keefer, Executrix of the will of Edgar C. Keefer, deceased, which exceptions involved construing the will of Jennie A. Keefer, deceased, the first wife of said Edgar C. Keefer.

Jennie A. Keefer, who died on December 7, 1939, and whose entire estate was personal property of the net value of $6,042.75, made a will dated January 27, 1936, which provided as follows:

"I, Jennie A. Keefer, make my will as follows. I will devise and bequeath all my estate real and personal to my beloved husband Edgar C. Keefer and appoint him to be the executor of this my will. In case of the death of both of us, Robert L. Sutliff to get 1,000 dollars and Minnie C. Deardorff or her heirs now residing at 305 E.

Queen Street, Chambersburg, the estate of real and personal property and appoint the First Nat. Bank of Sbg. as the executor of this my will."

Edgar C. Keefer died on March 13, 1943, leaving his entire estate, with the exception of three legacies, to his second wife, the appellee. She claims that her husband took under his first wife's will an absolute estate in her property and that this by his will passed to her. The appellant, who is the administrator of the estate of the above named Minnie C. Deardorff, deceased, (Mrs. Deardorff being Jennie A. Keefer's sister) contend that Edgar C. Keefer took only a life estate in his first wife's property and that upon his death, the estate of Jennie A. Keefer passed to Minnie C. Deardorff and Robert L. Sutliff, as provided in Jennie A. Keefer's will.

The "pole star" long fixed for the guidance of courts in interpreting wills is a testator's intention. In *Anderson's Estate*, 243 Pa. 34, 89 A. 306, this court said: "It is a cardinal rule that the actual intent of the testator must prevail when it can be ascertained" from the language of his will. This principle has been frequently reiterated by this and other courts. The United States Supreme Court said in *Y. W. C. H. v. French*, 187 U. S. 401, 411: "The intention of the testator expressed in his will, or clearly deducible therefrom, must prevail if consistent with the rules of law." 69 C. J., sec. 1121, page 66, states this principle: "Where particular terms, as expressed in some part of the will, are inconsistent with and repugnant to the testator's general intention as ascertained from all the provisions of the will, the general intention must prevail [citing cases], and in case of doubt a will should be construed in favor of a general or primary intention." In *Lefebvre v. D'Arcy*, 236 Pa. 235, 238, 84 A. 765, "In construing a will regard must be had to its whole scheme, and if it is found that a particular intent is inconsistent with a general intent, the former must give way to the latter." In *Sheetz's Appeal*, 82 Pa. 213, this court said: "While there is no doubt that of two

contradictory clauses in a will the first must give way, and the last must take effect, yet the two clauses must refer to the same subject-matter, and the last must be clearly inconsistent with the first. . . . The clearly-expressed purpose of a testator is not to be overborne by modifying directions that are ambiguous and equivocal, and may justify either of two opposite interpretations. Such directions are to be so construed as to support the testator's distinctly announced main intention."

The court below, in interpreting the will in question, said: "The disposition of the estate in the second sentence was not a gift of the remainder after a life estate, but was a substituted or alternative absolute gift if the absolute gift first given to the husband could not take effect by reason of his being dead when the testator died." This conclusion is reached by interpreting the phrase "in case of the death of both of us" as meaning "if my husband predeceases me" (that is, the testatrix). This would obviously be the correct interpretation if the testatrix had written "in case of the death of my husband." Appellant contends that the phrase should be interpreted as meaning "when both my husband and I are dead." This latter interpretation impresses us (1) as being more nearly justified by the language used, and (2) as being more nearly conformable to reason, by taking into consideration the situation of the testatrix and the circumstances surrounding her at the time the will was executed, as this court said in *McGlathery's Estate*, 311 Pa. 351, 355, 166 A. 886, (quoting from Jarman on Wills, 7th ed., 749) a judicial interpretation of a will should do in seeking a testator's intention.

When the testatrix wrote in the will the phrase "in case of the death of both of us," she clearly contemplated the time when both she and her husband would be dead, and not merely a time when her husband would be dead and she would still be living. If it was the latter contingency she had in mind, she would have undoubtedly written "if my husband dies before I do." Almost any lit-

erate husband or wife knows how to express in a will a contingency that the other spouse may die before the maker of the will dies. We decide that this testatrix did *not* intend to say that only in the event of her husband's death before her will became operative by her own death should Robert L. Sutliff "get 1,000 dollars" and her sister, "Minnie C. Deardorff or her heirs . . . [get] the estate . . ." We decide that she meant that when the time should come when "both of us," that is, her husband and herself were dead, the two persons named in the last sentence of the will should get what she "willed" them to have.

No one contends that the last sentence in the will is meaningless. It obviously was meant to describe one of three possible contingencies, to-wit: (1) The death of the husband before the will became operative by the maker's death, (2) the death of both husband and wife at the same moment, and (3) the time when both husband and wife were dead, even though they did not die simultaneously, and the estate would because of that fact be of no avail to either of them. We reject the first interpretation (contended for by appellee) because (as above stated) of the use of the phrase "both of us." "Both" is a word of well known meaning and as here used it clearly refers to the death of both spouses. The use of the phrase "in case of," which is often used to describe a contingency that *possibly* will *not* happen, i. e., a chance event, did *not* indicate that the testatrix had any doubt that the time *would* come when *both* she *and* her husband would be dead. We reject the second possible interpretation because the simultaneous death of husband and wife is of such rare occurrence that a husband or wife in making a will seldom think of that contingency and in those cases where they do they always make clear what they have in mind by using such a simple phrase as, e. g., "in case of my wife's and my death at the same time." If they are a married couple who do considerable travelling in conveyances subject to hazards which make fatal

accidents not unlikely the husband may use in his will the phrase: "In case of the death of my wife and myself in the same accident, I devise and bequeath my property in manner following." The third possible interpretation is the one which impresses us as being expressive of the testatrix's intention in testamentarily recording her wishes as to what was to be done with her property when *"both"* she and her husband were dead.

This conclusion is strengthened by a consideration of the circumstances confronting this testatrix when she made her will. In *Gilmore's Estate, Dorrance's Appeal,* 154 Pa. 523, 530, 26 A. 614, we quoted with approval the following from Jarman on Wills, vol. 1, sec. 394: "Though it is (as we have seen) the will itself (and not the intention as elsewhere collected) which constitutes the real and only subject to be expounded, yet in performing this office a court of construction is not bound to shut its eyes to the state of facts upon which the will was made; on the contrary, an investigation of such facts often materially aids in elucidating the scheme of disposition which occupied the mind of the testator." This means that when a court is interpreting a somewhat unclear testamentary direction, a consideration of what one so circumstanced as was the testator *would be likely to intend,* is properly used as an aid to that interpretation.

The following are some of the circumstances which must have been in Mrs. Jennie A. Keefer's mind when she made this will: (1) she inherited her estate from her father; (2) she "did not care for" her husband's relatives, and she had no children; (3) Minnie C. Deardorff was her sister and her nearest blood relative; (4) the testatrix had declared on several occasions prior to executing her will that she intended that her estate should ultimately go to *her* relatives and not to her husband's relatives. To these record circumstances may be added the circumstance that it is a matter of general knowledge that every married woman knows that if she predeceases her husband there is a possibility of his

marrying another woman (as did this testatrix's husband), and it is reasonable to believe that any married woman prefers, after providing for her surviving husband's maintenance during his remaining years, that what is left of *her* estate should then go to her close kindred rather than to her husband's second wife.

We are not unmindful of the principle that where there is no ambiguity in the terms used in a will the intent of the testator must be gathered from the terms of the will itself and cannot be changed or explained by parol: *Kemerer's Estate*, 251 Pa. 282, 96 A. 654; *Meetkirk's Estate*, 118 Pa. Superior Ct. 562. But there *was* ambiguity in the terms used in this will, and it was that which gave rise to our problem. To the question: Does the language of the second sentence of the will clearly reduce to a life estate the "absolute estate" given in the first sentence? (to which the court below gave a negative answer), we give an affirmative answer.

Our decision is not in conflict with what we said in *Smith v. Glen Alden Coal Co. et al.*, 347 Pa. 290, 297, 32 A. 2d 227 (cited by the court below), quoting from *Crawford v. Withrow*, 314 Pa. 497, 171 A. 894, as follows: "Where there has been an absolute gift of a thing, later words in the same instrument will not operate to reduce the estate thus given, unless it is reasonably certain that such was the intention of the donor." (Citing cases.) We *are* "reasonably certain" that it was this donor's intention when she penned the second sentence of her will to reduce to a life estate in her husband the "absolute gift" which she had made him in the first sentence. In *Garrett's Estate*, 321 Pa. 74, 183 A. 785 (also cited by the court below), the testator devised and bequeathed to his wife "all the rest, residue and remainder" of his estate "for her own absolute use and disposal." As we said in that case: "Her [the wife's] dominion over it [the estate] was to be absolute, that is to say, unlimited." In the instant case we are confronted in the first sentence of the will with no such categorical command

as confronted us in the *Garrett* case, and, *unlike* the will in that case, the first sentence in the will now before us is followed by a second sentence which clearly cuts down the gift first made.

The decree is reversed, with a procedendo. Appellee to pay the costs.

_____

DISSENTING OPINION BY MR. JUSTICE ALLEN M. STEARNE:

Had this been a case where in the first instance the testatrix had given her husband but a life estate, and under an ambiguous provision of the will we were seeking out testatrix's intent and were required to determine whether testatrix intended, after the decease of her husband, to pass her estate to her relatives or to her husband's second wife, our problem would have been comparatively uncomplicated. It must be conceded that no intent could ordinarily be attributed to any married woman to bequeath her estate to her successor. But this is *not* the problem which confronts us. This holographic will first gives to her husband an *absolute* estate and appoints him executor. What we are required to decide is whether the subsequent provisions in the will *in clear and unambiguous words* have cut down the husband's absolute estate to a *life estate*. Judge REESE, in the court below, in a most convincing and learned opinion ruled that the absolute estate of the husband had not been cut down to a life estate.

In expounding a will it is not what the testator may have meant, but what is the meaning of his words: *Weidman's Ap.*, 2 Walker 359; *Ludwick's Estate*, 269 Pa. 365, 112 A. 543; *Conner's Estate*, 346 Pa. 271, 29 A. 2d 514; *Loughran's Estate*, 144 Pa. Superior Ct. 88, 18 A. 2d 676.

The will reads as follows: "I, Jennie A. Keefer, make my will as follows. I will devise and bequeath all my estate real and personal to my beloved husband Edgar C. Keefer and appoint him to be the executor of this my will. In case of the death of both of us, Robert L. Sutliff to get 1,000 dollars and Minnie C. Deardorff or her heirs

now residing at 305 E. Queen St. Chambersburg, the estate of real and personal property and appoint the First Nat. Bank of Sbg. as the executor of this my will.

JENNIE A. KEEFER

Jan. 22, 1936"

No one can question that under this language the quality of the estate initially bequeathed to the husband was an absolute estate in fee. The sole question is whether the words which immediately follow, viz: *"In case of the death of both of us . . ."* are so clear and unambiguous that they manifest testatrix's intent to cut down the husband's absolute estate to a life estate. In my opinion they do not.

The principle is well settled that a reduction in quantum of a previous bequest may only be accomplished by use of words clearly and unambiguously expressed. In *Harris Estate,* 351 Pa. 368, 41 A. 2d 715, Mr. Justice LINN said (page 377) : "The rule is that a testator may by words, standing alone, give an absolute estate and then, by subsequent words, may cut down that absolute estate, but such a reduction in quantum may be made only by words clearly and unambiguously requiring that result: Chestnut v. Chestnut, 300 Pa. 146, 151 A. 339; Haydon's Estate, 334 Pa. 403, 6 A. 2d 581; Byrne's Estate, 320 Pa. 513, 181 A. 500." In *Haydon's Estate,* 334 Pa. 403, Mr. Justice DREW said (page 406) : "The principle is well settled that an absolute estate will not be cut down by subsequent provisions in the will unless the testator has expressed a clear and unambiguous intention to do so: Buechley's Estate, 283 Pa. 107; Cross v. Miller, 290 Pa. 213; Byrne's Estate, 320 Pa. 513."

The pivotal question is what did the testatrix intend, following the bequest of an absolute estate to her husband, by the use of the words *"In case of the death of both of us. . . ."* I disagree with the conclusion of the majority that "she clearly contemplated the time when both she and her husband would be dead." We have repeatedly held that where an absolute estate is bequeathed,

followed by a gift over in the event of death, such words will be construed as referring to death *in the lifetime* of the testator. When testator uses the suppositive "if", "should", or "in case of" he is not referring to the inevitable death of B, but rather the death of B within a limited period. He does not refer to death as an event which is certain to occur, but as an event which may or may not occur. *Caldwell v. Skilton*, 13 Pa. 152; *Holmes v. Stanhope*, 217 Pa. 63, 66 A. 146; *Rapson's Estate*, 318 Pa. 587, 179 A. 436. In *Rapson's Estate*, supra, Mr. Chief Justice FRAZER said (page 589) : ". . . since there is an express and unambiguous gift of the residue to testatrix's husband, a mere doubt as to the effect of subsequent clauses in reducing the quantum of his interest must be resolved in favor of the vesting of an absolute estate in him." In Restatement, Property, section 263, comment a, it is stated: "A limitation which comes within the rule stated in this Section refers to 'death,' not as an event which is certain to occur, but as an event which may or may not occur. Since death itself is an event certain to occur, the contingency, thus provided for, can only exist with respect to the timing of the death referred to, that is, with respect to whether this death will occur before some other event. When the limitation fails to specify this other event, the death of the testator . is the only other event to which the death of the devisee can reasonably be related. Consequently, in such limitations the substitutional construction provides the only mode of giving effect to the contingency expressed by the language of the limitation."

It is quite within the realm of possibility that the words "In case of the death of both of us" were used by testatrix in contemplation of their simultaneous deaths in a common disaster, or death as a result thereof. I cannot agree with the statement in the majority's opinion that ". . . the simultaneous death of husband and wife is of such rare occurrence that a husband or wife in making a will seldom think of that contingency" and

that when they do they express their intent in plain language. An examination of joint and reciprocal wills over the past decade, in our records, will reveal that this contemplation is apparent with increasing frequency, and such intent is not always expressed in clear and unambiguous language. Whether a husband and wife are, or are not, extensive travelers seems immaterial. The public news increasingly report such common disasters from fires, explosions, and travel in automobiles, airplanes, railroad trains, steamships, etc. I disagree that in these modern days married testators do not contemplate death in a common disaster.

In *Rapson's Estate,* supra, common disaster was clearly in testatrix's contemplation. She used words much stronger than those now before us. Her words were "In case of my husband dying *before* me, or (in a common disaster) or 'after me' ", we ruled that a preceding absolute gift to the husband had not been cut down.

But whether testatrix by use of the words "In case of the death of both of us" meant deaths in a common disaster, or (as held by the majority) upon the inevitable deaths of both, or as an event which may or may not occur, she has *not* expressed her intent in the clear and unambiguous language required to cut down the absolute estate previously given to her husband: *Harris Estate; Haydon's Estate,* supra. That such words are ambiguous is most apparent. Indeed Mr. Chief Justice Maxey, in the majority opinion says *"But there was ambiguity in the terms used in this will . . ."* and then resolve the ambiguity in favor of a construction that by the words used in all the surrounding circumstances testatrix intended the contingency to be that of the inevitable death of both. This, to my mind, is in clear disagreement with our previous cases.

For the foregoing reasons, I dissent, and would affirm the decree of the learned court below.