**SECURITY–PEOPLES TRUST COMPA-NY, Executor of the Estate of Edna Buhl Putts, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 1101—Erie.**

United States District Court
W. D. Pennsylvania.

Feb. 2, 1965.

Daniel L. R. Miller, McClure & Miller, Erie, Pa., for plaintiff.

Gustave Diamond, U. S. Atty., Pittsburgh, Pa., for defendant.

WEBER, District Judge.

This case involves an action in the United States District Court to recover estate taxes paid by decedent's estate on the corpus of a testamentary trust established under the will of decedent's husband. The government claims that the tax is due under the provisions of § 2041 (a) (2) of the Internal Revenue Code of 1954, 26 U.S.C.1958 Ed. § 2041; 26 U.S. C.A. § 2041.

Decedent, Edna Buhl Putts, died testate June 7, 1960, a resident of Erie, Pennsylvania. A deficiency in estate taxes was assessed against her estate by the Internal Revenue Service by reason of its inclusion in her estate of the corpus of the trust in question. This was paid, a timely claim for refund was made and disallowed, and this action followed.

A trial was held before this Court without jury. Most of the matters in evidence were stipulated between the parties. Taxpayer produced two witnesses, trust officers of plaintiff bank, to testify as to the computation of the refund claimed by plaintiff, and to testify, under objection by the government, that there had been no invasion of the principal of the trust fund during decedent's life, and no request from decedent for such invasion, that the trustee was familiar with the extent of decedent's own estate which was approximately four and one-half times as large as the trust estate, that her income from the trust estate was approximately twelve percent of her total income, that her income exceeded her expenditures and she increased the corpus of her own estate, and that the trustee was personally familiar with her manner of living. The Government objected that such evidence was irrelevant and immaterial to the legal issues involved here.

The government contends that the decedent possessed at the time of her death a general power of appointment over the corpus of the trust created by her husband's will, and further that this general power of appointment was not limited to an ascertainable standard. Because of this the government claims that the corpus of this trust is includable in the gross estate of decedent for federal es-

tate tax purposes under § 2041 of the Internal Revenue Code. The applicable provisions of the statute are as follows:

" § 2041. POWERS OF APPOINTMENT

"(a) *In General.*—The value of the gross estate shall include the value of all property.—

\* \* \* \* \* \*

"(2) *Powers created after October 21, 1942.*—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, \* \*.

\* \* \* \* \* \*

"(b) Definitions.—For purposes of subsection (a)—

"(1) *General power of appointment.*—The term 'general power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—

"(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment.

" \* \* \* " (26 U.S.C. 1958 Ed. § 2041)

Decedent's husband, B. Swayne Putts, predeceased his wife on January 31, 1952. By his will, executed on October 4, 1948, except for personal effects given to his wife, he left his entire estate to the Security-Peoples Trust Company in trust.[1]

1. The relevant portions of the will are:
"ARTICLE THIRD
"I give, devise and bequeath all the rest, residue and remainder of my Estate, real, personal and mixed, of whatsoever kind, nature and description, wheresoever situated, unto the SECURITY-PEOPLES TRUST COMPANY, a banking corporation located at Erie, Pennsylvania, IN TRUST, nevertheless for the use and benefit of the beneficiaries hereinafter named in the manner hereinafter designated.
"ARTICLE FOURTH
"My executor while in possession and control of my Estate, and thereafter my Trustee, is hereby authorized to retain, hold, possess, manage, control, sell, convey, encumber, lease, invest and reinvest, and successively invest and reinvest the assets thereof according to its sole judgment and discretion, in such securities or other property, personal or real, and upon such terms and for such length of time, as to it shall seem advisable, without any limitation upon its power or authority so to do, either by statute or otherwise. I further authorize my Trustee to charge all premiums on investments against principal, and to credit all discounts on investments to principal. Any and all cash dividends, whether ordinary or extraordinary or special, shall be considered as income; and any and all stock dividends, rights, warrants, or other things of value, shall be considered as corpus and added to the principal of the estate. Any profit realized from the sale of any security or investment shall be considered as corpus and added to the principal of the trust, and likewise any loss on any such sale shall be deducted from the principal and not from the income of the Trust. The Trustee, in its discretion, may apportion between principal and income any expenditure which in its opinion should be apportioned, notwithstanding any rule or any provision hereof to the contrary.
"In any case in which the Trustee is required to divide the principal of the estate in parts or shares or to distribute the same, it is hereby authorized and empowered in its sole discretion to make division or distribution in kind or partly in kind and partly in money. The judgment of the Trustee concerning values for the purpose of such division or distribution of property or securities shall be binding and conclusive on all persons interested therein. My trustee may accumulate such portion of the income payable to any minor beneficiaries that may be entitled to participate hereunder as my Trustee in its discretion may deed (deem) advisable
"ARTICLE FIFTH
"*Section* 1. In the event that my wife, EDNA BUHL PUTTS, is living at the time of my death, my Trustee shall pay the income from the Trust Estate in convenient installments unto her during the term of her natural life.
"*Section* 2. On the death of my said wife, EDNA BUHL PUTTS, or on my death in the event my said wife shall

We have appended the trust provisions in full because we believe that this instrument determines the problem confronting us, whether this instrument con-

predecease me, my trustee shall pay the income from the Trust Estate in convenient installments unto my daughter, CHRISTENE PUTTS BUHL, during the term of her natural life.

"*Section 3.* On the death of my daughter, CHRISTENE PUTTS BUHL, or in the event that she shall predecease me, or die before my wife, EDNA BUHL PUTTS, then on my death or the death of my said wife, EDNA BUHL PUTTS, which ever shall last occur, my Trustee shall pay the income from the Trust Estate in convenient installments as follows, to-wit: one-half (1/2) thereof unto my son-in-law, HENRY W. BUHL, during the term of his natural life, and one-half (1/2) thereof equally to or for the use of the children of my daughter, CHRISTENE PUTTS BUHL, to wit: LOIS CHRISTENE BUHL, NANCY ANNE BUHL, and any other children of my said daughter, CHRISTENE PUTTS BUHL, that may be hereafter born or adopted until they respectively become forty-five (45) years of age. Should my son-in-law, HENRY W. BUHL, not be living at the time he would otherwise have been entitled to receive one-half (1/2) of the net income of the Trust Estate under the foregoing provisions, or on his death if the same should occur subsequent thereto, I direct that my Trustee shall pay all of the income from the Trust Estate to or for the use of LOIS CHRISTENE BUHL, NANCY ANNE BUHL, and any other children of my said daughter, CHRISTENE PUTTS BUHL, that may be hereafter born or adopted. As the children of my daughter, CHRISTENE PUTTS BUHL, respectively become forty-five (45) years of age, or, if they or either of them have become forty-five (45) years of age at or prior to the time of the happening of a contingency which would entitle said child or children unto one-half (1/2) or all of the income from the Trust Estate, I direct that the principal of the Trust Estate from which said child or children would otherwise be entitled to receive income shall be paid over to said child or children free and clear of the terms hereof.

"*Section 4.* In the event that any of the children of my daughter, CHRISTENE PUTTS BUHL, shall die leaving issue her surviving, either before or after becoming entitled to receive income or principal under the terms of this my Will, I give, devise and bequeath the shares of income and principal to which such decedent would have been entitled if living, unto her issue, per stirpes, or, if such decedent shall leave no issue her surviving, I give, devise, and bequeath her shares of income and principal hereunder unto the survivor or survivors of said children, with the surviving issue of any who may then be deceased taking per stirpes the share to which their parent would have been entitled if living. On becoming twenty-one (21) years of age, said issue of my daughter's children shall receive their share of principal and accumulated income of the Trust Estate free and clear of the terms hereof.

"*Section 5.* If the survivor of the children of my daughter, CHRISTENE PUTTS BUHL, and their issue shall die without leaving issue surviving either before or after becoming entitled to receive income and/or principal under the terms of this my Will, but prior to said Trust Estate being completely distributed, I give, devise and bequeath the portions of the Trust Estate from which said children or their issue would have been entitled to receive income or principal therefrom if living, as follows: to wit: Two-thirds (2/3) thereof unto the heirs-at-law of my wife, EDNA BUHL PUTTS, as determined by the Intestate Laws of the Commonwealth of Pennsylvania existing at said time or times, and one-third (1/3) thereof unto my heirs-at-law as determined by said Laws.

"*Section 6.* I direct that the gifts of principal of the Trust Estate herein made shall include also accumulated income thereon; further, that the words, 'children' and 'issue' as herein used shall include adopted as well as natural children and issue and that adopted children and their issue shall be entitled to participate hereunder to the same extent as if natural children or issue of the persons herein named or described.

"ARTICLE SIXTH

"I hereby authorize my Trustee to advance portions of the principal of the Trust Estate to or for the use or benefit of the following beneficiaries of income therefrom, to wit, my wife, EDNA BUHL PUTTS, my daughter, CHRISTENE PUTTS BUHL, and children and issue of my said daughter, CHRISTENE PUTTS BUHL, during the periods in which said beneficiaries shall be entitled to receive income, at such times, in such amounts, and for such purposes as my Trustee in its discretion may deem

fers a "general power of appointment" upon the decedent, Edna Buhl Putts, which she possessed at the time of her death.

The Treasury Regulations on Estate Tax (1954 Code) § 20.2041–1(b) (1), further defines a power of appointment to include "all powers which are in substance and effect powers of appointment regardless of the nomenclature used in creating the power and regardless of the local property law connotations." § 20.-2041–1(c) of the Regulations defines a general power of appointment as a power "exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate."

The legislative history of § 2041 may throw some light on the intention of Congress in adopting the above definition.

§ 2041 of the Internal Revenue Code of 1954 originated in the Powers of Appointment Act of 1951, which amended the prior Act of 1942. The Senate Committee on Finance reported on the bill (H.R.2084), Senate Report No. 382, June 4, 1951:

*"General Statement*

This bill simplifies sections 811 (f) and 1000(c) of the Internal Revenue Code, relating to estate and gift tax on powers of appointment.

The present law taxes all powers to appoint, whether exercised or not, except two specified classes of powers. One of these exempts powers to appoint to certain near relatives. *The other is intended to exempt fiduciary powers but has proved inadequate for the purpose.* (Emphasis supplied.) (p. 1530)

\*　　\*　　\*　　\*　　\*　　\*

"The provisions of the 1942 act, taxing the exercise of limited powers of appointment and the mere possession of unexercised powers, were new to the Federal tax system. *They extended, or might be construed to extend, to emergency powers to invade principal, discretionary powers given to trustees, and other types of powers which had theretofore not been regarded as powers of appointment.* \*　\*　\* (Emphasis supplied.) (p. 1531)

\*　　\*　　\*　　\*　　\*　　\*

"As to powers created after the passage of the 1942 act, the bill subjects to estate tax the possession of a general power of appointment, whether or not the power is exer-

advisable. I direct that my Trustee shall exercise liberally the power to advance principal herein conferred to promote the health, comfort, maintenance or welfare of the income beneficiaries hereinabove referred to. Such principal advancements, when made, shall be charged to and deducted from any principal payment later due hereunder to the recipient of said advancement or to any person claiming under or through the same. Prior to such principal distribution, said advancements shall be chargeable against the portion of the Trust Estate from which the recipient thereof or persons thereunder claiming shall be entitled to receive income and shall not diminish the principal from which income may be due concurrent beneficiaries under the terms hereof.

"ARTICLE SEVENTH

"None of the shares of income or principal by this instrument given to or directed to be held for the use and benefit of the several and respective beneficiaries herein specified, shall be in any way or manner subject or liable to their or any of their anticipation, sale, pledge, debts, contracts, engagements, or liabilities, and shall not be subject or liable to attachment or execution or sequestration under any legal or equitable or other process.

"ARTICLE EIGHTH

"During the administration of my Estate my Executor shall disburse the income received from investments to the person or persons who would be entitled thereto if my estate were then fully administered, and may make expenditures for obligations and expenses of my estate from the principal assets thereof.

"ARTICLE NINTH

"I hereby nominate, constitute, and appoint the SECURITY-PEOPLES TRUST COMPANY, of Erie, Pennsylvania, as Executor of this my Last Will and Testament and Testamentary Guardian of the estates of any minors entitled to participate hereunder."

cised, and subjects to gift tax the exercise or release of such power. *The bill defines a general power of appointment as a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate. This includes a general beneficial power to appoint by will. It also includes certain rights to consume principal.* It provides a test of taxability which is simple, clear-cut, and easy to apply. (Emphasis supplied.) (p. 1531)

" \* \* \* Your committee believes that the most important consideration is to make the law simple and definite enough to be understood and applied by the average lawyer, and that the present bill will accomplish that purpose. (p. 1531)

*"Discussion of Specific Provisions*

\* \* \* \* \* \*

"The definition provides that, if certain limitations or restrictions are present, a power is not a general power even though exercisable by the decedent in his own favor. (p. 1533)

\* \* \* \* \* \*

*"If the holder of a power is legally accountable for its exercise or non-exercise, the power is not deemed to be a general power.* However, a power which is exercisable in favor of the holder, his estate, his creditors, or the creditors of his estate, is not regarded as a power for which the holder is legally accountable." (Emphasis supplied.) (p. 1534) 2 U. S. Code Congressional and Administrative Service, 82nd Congress 1st Session 1951, p. 1530 et seq.

From these statements, we draw the conclusion that Congress intended to tax as part of the estate of a decedent any property over which the decedent had such a power of control as to be able to apply it to his own benefit, or the benefit of his creditors, to dispose of it by will, or to appoint it to his estate or the creditors of his estate, or to consume it without restriction. This fits the ordinary definitions of what lawyers call a "general power of appointment." 41 Am.Jur. "Powers", §§ 3, 4, pp. 807, 808; 72 C.J.S. Powers § 1, p. 401.

The Senate report indicates a different treatment where the holder is not completely free from legal control or restraint in the disposition of the property. It states that where the holder of the power is "legally accountable" for its exercise it is not deemed a general power. This can only refer to fiduciary powers which are always subject to the control of the courts and for which the holder is always under a legal duty to account. The Senate speaks of its intention, in passing the Act, of making the intended exemption of fiduciary powers in the prior law more adequate.

The decided cases which have construed this section of the Internal Revenue Code,[2] as well as those cases which construed the provisions relating to powers of appointment for determining the right to a charitable deduction (§ 2055), and the right to the marital deduction (§ 2056), all resort to an examination of the scope or breadth of the power under local law.

"The initial step is to determine in light of local law, the interest conveyed to the decedent under this trust, i. e., the extent to which, consonant with testamentary trust provision, the decedent could invade and consume the principal. Morgan v. Commissioner, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940); Commissioner of Internal Revenue v. Ellis' Estate, 252 F.2d 109, 113 (3 Cir. 1958); Hoffman v. McGinnes, 277 F.

**2.** Phinney v. Kay, 275 F.2d 776 (5th Cir. 1960); Barritt v. Tomlinson, 129 F.Supp. 642 (S.D.Fla.1955); Snyder v. United States, 203 F.Supp. 195 (W.D.Ky.1962); Pittsfield Nat. Bank v. United States, 181 F.Supp. 851 (D.Mass.1960); Strite v.

McGinnes, 215 F.Supp. 513 (E.D.Pa. 1963, Aff'd. 3 Cir., 330 F.2d 234, Cert. Den. 379 U.S. 836, 85 S.Ct. 69, Rehearing Denied 379 U.S. 910, 85 S.Ct. 185 (3rd Cir. 1964).

2d 598, 602 [90 A.L.R.2d 405] (3 Cir.1960)." Strite v. McGinnes, 330 F.2d 234, at pp. 238 and 239, (3d Cir.1964).

■ In Pennsylvania the cardinal rule of construction is that the true intention of the testator must govern, as that intention may be found within the four corners of the will. Fox Appeal, 99 Pa. 382, Anderson's Estate, 243 Pa. 34, 89 A. 306; In re Keefer's Estate, 353 Pa. 281, 45 A.2d 31, 165 A.L.R. 1277.

> "This is but one of the hundreds of expressions of the cardinal rule in the interpretation of wills to find the testator's intent, and by that is meant his actual, personal, individual intent, not a mere presumptive conventional intent inferred from the use of a set phrase or a familiar form of words." Tyson's Estate, 191 Pa. 218 at p. 225, 43 A. 131 at 132 (1899).

With this in mind let us examine the instrument by which this power was created. From it we find the following:

1. Testator left his entire estate (except for his personal effects) to the trust.

2. Testator chose a sole, independent, corporate trustee to administer the trust.

3. Testator provided detailed powers and limitations over the Trustee in the management of the trust assets, its allocations of principal, capital growth, income, accumulations and distribution.

4. Testator intended a long term administration of this trust. Testator created several successive beneficiaries; first his wife, during her lifetime; then his daughter, for her lifetime; then after his daughter's death, one-half to his son-in-law for his lifetime; the remaining one-half of the income to his grand-daughters until they become 45 years of age; after the death of his son-in-law all the income to the grandchildren; and if the grandchildren should die before reaching age 45, then to issue of the grandchildren until they become 21 years of age.

5. From the above we conclude that his wife, Edna Buhl Putts, the within decedent, was not the primary object of his bounty.

6. The power to invade is spoken of in terms of "advance portions of principal." Such advances were to be made a charge and deduction from any principal payment later due to the recipient of said advancement or any person claiming through or under the same. Since no principal payment would be due to either Testator's wife (the within decedent); his daughter or his son-in-law, the only conclusion that we can make from this language is that the Testator did not contemplate principal advancements in the ordinary course of events to these income beneficiaries (a factor which is demonstrated by other evidence in this case outside the Will).

7. Testator did not authorize invasion of principal for all of the income beneficiaries, he lists only his wife, his daughter and the children of his daughter.

8. Testator directed that Trustee exercise its discretion liberally for the beneficiaries named, i. e., his wife, his daughter, and his grandchildren, with no indication of preference, but only for the specific purposes of promoting their health, comfort, maintenance or welfare.

9. Testator provided that none of the shares of income or principal of the respective beneficiaries should be in any way or manner subject or liable to their anticipation, sale, pledge, debts, contracts, engagements or liabilities, and shall not be liable to attachment or execution or sequestration under any legal or equitable or other process.

10. Finally, the power to make advancements of principal is vested solely in the independent corporate Trustee, at such times, in such amounts, and for such purposes as the Trustee in its discretion may deem advisable.

The government argues that it is the substance and effect of the transaction that will govern, rather than the form.

> "Technical considerations, niceties of the law of trusts or conveyances,

or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes should not obscure the basic issue." Helvering v. Clifford, 309 U.S. 331, at p. 334, 60 S.Ct. 554, at p. 556, 84 L.Ed. 788 (1940).

Under its view, "a power to consume, invade, or appropriate for the benefit of a decedent" is a general power of appointment, taking these words from the specific exception of § 2041(b) (1) (A) as to those powers limited to an ascertainable standard. Without going further into the question of ascertainable standard, we must proceed with our inquiry into the effect of the law of Pennsylvania on the language of the will here.

The Government argues that "under Pennsylvania law a beneficiary can compel a trustee to exercise its discretion to use the trust property for the benefit of the beneficiary." We have examined the Pennsylvania cases cited by it and we do not find this to be a complete statement of the law of Pennsylvania. Rather the Pennsylvania rule appears to be that in a proper case, after considering the instrument creating the trust and ascertaining from it the donor's or testator's intentions; and considering the circumstances calling for the exercise of discretion, a Pennsylvania court can compel a Trustee's exercise of discretion to carry out the donor's or testator's intention, and conversely, under the proper circumstances, it will uphold the refusal of the Trustee to make payments under discretion granted it.

First, we must distinguish between the cases where a legal trust estate has been created and those cases where there is no legal trust estate but rather where an individual has been given an estate for life in real or personal property with a power to use, occupy, consume, sell or dispose of, with a gift over of the remainder. In the latter class of cases the Pennsylvania courts hold that the life tenant is still under a legal obligation to exercise this power in "good faith." Rumsey's Estate, 287 Pa. 448, 135 A. 119 (1926); "honestly and fairly," Zumbro v. Zumbro, 69 Pa.Super. 600 (1910), and not to defeat the intention of the testator, In re Tyson's Estate, 191 Pa. 218, 43 A. 131 (1899).

"* * * the court can only interfere to protect the remaindermen when the widow attempts to divert the fund from the purpose for which it was bequeathed her." Watson's Estate, 241 Pa. 271, at p. 280, 88 A. 433 at p. 436 (1913).

See also Powell's Estate, 340 Pa. 404, 17 A.2d 391 (1941).

In Tyson's Estate, supra, the Pennsylvania Supreme Court, said, 191 Pa. at p. 225, 43 A. at p. 132:

"The court below held that * * * the personalty passed to his widow absolutely, on the ground that a bequest of personalty, with power to consume, sell, and dispose of, carries an absolute and unrestricted title to it. That such is the general rule cannot be disputed. It is not, however, a rule of law, but a rule of construction in aid of reaching the intent of the testator; and, where a different intent is clear, the rule cannot be applied to defeat it."

In Tyson's Estate, supra, it was held that the widow's power did not include a power of testamentary disposition to exclude the remaindermen.

A stronger rule applies where the testator has given title and possession of the trust assets to an independent trustee with discretion to invade corpus for the benefit of an income beneficiary. In such cases the trustee in Pennsylvania is controlled in his administration and disposition of assets by the provisions of the Pennsylvania Fiduciaries Act, Act of April 18, 1949, P.L. 512, 20 P.S. § 320. 101 et seq. This Act imposes duties of accounting, control of the court, audit, notice to parties in interest, and approval of distributions. While the Federal tax cases look to the substance rather than the form of a transaction, nevertheless we see a difference in substance rather than form where the power or the discretion is imposed on one who is subject

48

to control of the laws of Pennsylvania governing trustees.

 An "active" trust in Pennsylvania is one in which active duties are imposed on the trustee with respect to the control and management of the subject matter. Bowman's Estate, 332 Pa. 197, 2 A.2d 725 (1938). It remains an active trust so long as it is necessary that legal title to the assets remain in the trustee to enable him to perform his duties. Rehr v. Fidelity-Philadelphia Trust Co., 310 Pa. 301, 165 A. 380, 91 A.L.R. 99 (1933). When there is no longer any duty in the trustee except to transfer over to the beneficiary the income and the corpus of the trust estate, the trust becomes a "dry" trust, Bergland's Estate, 372 Pa. 1, 92 A.2d 207 (1952); Hemphill's Estate, 180 Pa. 95, 36 A. 409 (1897), and the Statute of Uses as part of the common law of Pennsylvania terminates the trust. Sheridan v. Coughlin, 352 Pa. 226, 42 A. 2d 618 (1945); Overbeck v. McHale, 354 Pa. 177, 47 A.2d 142 (1946); Sheasley's Trust, 366 Pa. 316, 77 A.2d 448 (1951).

 The government, in its brief, has cited a number of Pennsylvania cases to support the proposition that this decedent could have compelled the trustee to pay over principal to her without regard to her need or the assets of her own estate, except only for the limitation of the "good faith" standard. The good faith standard, in our view, has been limited to the life estate cases. Our examination of the Pennsylvania trustee cases reveals that the Pennsylvania courts will only compel the exercise of a trustee's discretion to invade principal when there has been a showing of necessity and a clear direction in the trust instrument.

In Walter's Case, 278 Pa. 421, 123 A. 408 (1923); Erisman v. Directors of the Poor, 47 Pa. 509 (1864); and Hohenshieldt's Estate, 105 Pa.Super. 18, 159 A. 71 (1932); the courts in each case compelled the trustee to exercise his discretion to invade the principal of a trust for the benefit of the beneficiary who had been declared an incompetent or a lunatic and was being maintained at public expense in a public institution. In such cases Pennsylvania statutes allow public bodies to recover this expense of support from any property or estate of the inmates.

In Walter's Case, supra, the Pennsylvania Supreme Court said with respect to the discretion of a trustee:

"* * * his discretion is but a legal one, and, whenever the law determines that a proper case has arisen in which the trustee's discretion should have been exercised in a particular way, he will be constrained to act in accordance therewith." (278 Pa. at p. 423, 123 A. at p. 409).

In other cases such as Keller v. Commercial Trust Co., 73 Pa.Super. 533 (1919); In re Rudy's Estate, 71 Pa. Super. 448 (1918); Hughes' Estate, 231 Pa. 475, 80 A. 1104 (1911); and Minnich v. People's Trust, 29 Pa.Super. 334 (1905), the Court authorized or compelled the trustees to exercise discretion to invade corpus to provide for the needs of incompetents out of corpus of estates provided for their benefit. In the Minnich v. People's Trust case, supra, the court held that the fact that the beneficiary had other assets was immaterial since the trust fund was expressly created for the benefit of the incompetent. In Hughes' Estate, supra, where the question of the extent and quality of the provisions for the beneficiary was involved, the Court stated:

"It is held in Steele's Appeal, 47 Pa. 437, that a comfortable maintenance, measured by the station, habits, and tastes of the testator and the beneficiary, was intended, no more and no less, without extravagance either as to place or material." (231 Pa. at p. 477, 80 A. at p. 1105).

In both Hill v. Hill, 277 Pa. 165, 120 A. 775 (1923); and In re Brown's Appeal, 345 Pa. 373, 29 A.2d 52 (1942), the Court compelled the exercise of the trustee's discretion to pay out funds despite the availability of other assets for the use of the beneficiaries because it

found an absolute mandate in the trust instrument directing the use of the trust estate for such purposes. There was also evidence in these cases of the trustee withholding distribution because of family disagreements.

But in the ordinary trust case the Pennsylvania Courts will restrict and control the trustee's exercise of discretion, and support the trustee's discretion to refuse or withhold invasion of principal. In Seacrist's Estate, 362 Pa. 190, 66 A.2d 836 (1949), the Court upheld the trustee's refusal to pay from principal to a disabled son, stating:

> To know the quality and quantity of petitioner's private estate becomes very material in order to determine his good faith and his necessities. (p. 194, 66 A.2d p. 838).

In Briggs' Estate, 150 Pa.Super. 66, 27 A.2d 430 (1942), the Court held:

> " \* \* \* the exercise of discretion by trustees is nevertheless subject to the limitation that they must not act outside the bounds of reasonable judgment." (p. 67, 27 A.2d p. 433).

There, at the objection of a remainderman, the Court held that the Trustees had abused their discretion in making payment because the beneficiary had other means of support and would not personally benefit by payment.

As stated by Circuit Judge Kalodner in Hoffman v. McGinnes, 277 F.2d 598, at p. 603, 90 A.L.R.2d 405 (3rd Cir.1960):

> "The rationale of the Pennsylvania decisions, cited in Ellis' Estate (252 F.2d 109), limiting a life tenant's withdrawals from principal, is the judicial safeguarding of remainder interests to assure compliance with the testator's intent as to such interests."

In the present case, since there are a series of further life beneficiaries and remaindermen, the trustee would be under a strong duty to protect their interests in the face of any request of the decedent for invasion. Under the Pennsylvania decisions, a Court would be bound to look into the assets of her own estate, which were well known to the trustee, who managed them.

The fact that this decedent had an estate of her own almost five times as great as that of her husband would not only compel the trustee to resist her request for invasion except for clear necessity, but it would also guide the court in any attempt to determine the testator's intent. The extent of testator's wife's personal estate would be a strong factor in his plan for the disposition of his own estate and the court may look to such extrinsic and contemporaneous circumstances to ascertain his intent. Scholler Trust, 403 Pa. 97, 169 A.2d 554 (1961); Wolters' Estate, 359 Pa. 520, 59 A.2d 147 (1948).

The cases in which the Federal Courts have construed § 2041 fall into two classes; those involving the question of whether decedent held a general power under the law, and those which, after finding that decedent possessed a power to appoint to himself, seek to find if it is limited by an ascertainable standard relating to health, education, support and maintenance.

Not every case must meet the "ascertainable standards" test, but only those in which there is first shown a power in the decedent to transfer or appropriate to himself. Where such power is held by the decedent, it may still result in an exception to taxation where the power of decedent is limited by the "ascertainable standards." If the power of the decedent is not of the standard defined by the Code as a "general power", as measured by state law, we need not consider the "ascertainable standards" measure.

In Pittsfield National Bank v. United States, 181 F.Supp. 851 (D.Mass.1960), where testatrix created a trust with an independent corporate trustee, with children as remaindermen, giving her husband a life income, "together with all or such part of the principal of same as he may from time to time request, he to be the sole judge of his needs," the

court held that the word "needs" was a limitation because under local law husband only had the power to invade corpus in the event he was in financial or physical need. The court held that the words "his needs" established an ascertainable standard. The court further paid regard to the evidence that Testatrix clearly intended to provide for remaindermen and that the husband had substantial property of his own so that it was unlikely that the corpus would be invaded.

In Strite v. McGinnes, 330 F.2d 234 (3d Cir.1964) affirming 215 F.Supp. 513 (E.D.Pa.1963), the Court of Appeals held that under Pennsylvania law, a beneficiary who was also the trustee, who had the power to appropriate to herself for her own "benefit", was not limited to the ascertainable standard, particularly where "the will emphatically reveals that the (beneficiary and trustee) (is) intended to be the main objects of the testatrix's bounty." (330 F.2d p. 239, quoting from the District Court's opinion 215 F.Supp. at p. 517).

The remainder of the Federal Court decisions under § 2041 all turn on whether the power to invade was a general or a limited power under applicable local law.[3]

While the analogy between the § 2041 "general power" cases and the § 2055 "charitable deduction" cases has frequently been discussed in connection with the determination of the "ascertainable standard", despite the different qualities which each attempts to define, we are of the opinion that decisions of the § 2056 cases, concerning the marital deduction, have a closer parallel to the interpretation of § 2041.

 Section 2056(b) (5) requires as a test of eligibility for the marital deduction that the surviving spouse who has a life estate must also have a power to appoint which is exercisable in all' events. Hoffman v. McGinnes, 277 F.2d 598 (3rd Cir.1960). In other words, we believe that the "general power of ap-

pointment" which is the standard for determining the inclusion of assets in the gross estate of a decedent under § 2041 is a power of the same kind and quality as the "power of appointment exercisable in all events" in the surviving spouse which qualifies the assets for the marital deduction under § 2056.

In discussing the analogy of ascertainable standards in a § 2041 and § 2055 case, Judge Freedman stated in Strite v. McGinnes, 215 F.Supp. 513 at page 514 (note 2) (E.D.Pa.1963):

"Cases under § 2056 have only limited relevance since the question which arises is not whether an ascertainable standard exists but whether *any* standard exists. In order to qualify for the marital deduction, the surviving spouse must have an *unqualified* power to appoint the principal to herself during her lifetime. The power must be one that may be exercised 'in all events.' "

The wording of the two Code sections strengthens our belief that the powers of appointment under § 2041 and § 2056 are powers of the same kind and quality.

"§ 2041(b) *Definition*

"(1) *General Power of Appointment.*—The term 'general power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate."

"§ 2056(b)(5) *Life estate with power of appointment in the surviving spouse.*—In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or * * * a specific portion thereof * * * with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in

3. Phinney v. Kay, 275 F.2d 776 (5th Cir. 1960); Barritt v. Tomlinson, 129 F. Supp. 642 (S.D.Fla.1955); Snyder v. United States, 203 F.Supp. 195 (W.D. Ky.1962).

each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—

"(A) the interest of such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, * * *."

Thus if a spouse has a "general power of appointment" as defined in Section 2041(b)(1) over property in which she has a life estate, it would qualify for the marital deduction of § 2056. Conversely, we believe that if she has no power to appoint to herself exercisable in all events under the terms of § 2056, she has no "general power of appointment" in the terms of § 2041(b)(1).

Following this line of reasoning we may consider two cases involving § 2056 decided in the United States Court of Appeals for the Third Circuit, both of which arose in Pennsylvania and both of which were ultimately determined under the Pennsylvania law applicable.

In Commissioner v. Ellis's Estate, 252 F.2d 109 (3rd Cir.1958), decedent left his estate in trust, $5,000 per annum to be payable to his wife for life. He further provides that should his wife "*require*" sums in excess of $5,000 per annum, "she, and she alone, shall be the judge of how much shall be required," the same should be paid to her, any deficiency of income to be supplied out of principal. On the death of his wife there were gifts of remainders, one-half to the wife's estate, one-half to the children. The will also contained a spendthrift clause preserving the estate from pledge, assignment, anticipation, debts, or liabilities of any beneficiary. The estate claimed a marital deduction for assets of the trust. Chief Judge Biggs says, 252 F.2d at p. 113:

"* * * We come then to the issue as to what was the exact nature of the power given Mrs. Ellis over the residuary estate during her lifetime.

"The law of Pennsylvania must be applied to determine what was the nature of the power Mrs. Ellis possessed. Morgan v. Commissioner, 1939, 309 U.S. 78, 626, 60 S.Ct. 424, 84 L.Ed. 585, 1035; Helvering v. Stuart, 1942, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154 * * *."

Chief Judge Biggs first determines that the power to consume corpus for herself under Pennsylvania law was limited by the "good faith" standard which the Pennsylvania courts have imposed on life tenants. Rumsey's Estate, 287 Pa. 448, 135 A. 119 (1926); Zumbro v. Zumbro, 69 Pa.Super. 600 (1918); Degenkolv v. Daube, 143 Pa.Super. 579, 18 A.2d 464 (1941); Tyson's Estate, 191 Pa. 218, 43 A. 131 (1899).

Secondly, decedent had named remaindermen. Therefore, the court concluded that she had no power to appoint by will.

The court also found that there was no merger of a life estate and the one-half remainder given the life tenant's estate here under the general Pennsylvania rule (Conley's Estate, 197 Pa. 291, 47 A. 238 (1900), because of the spendthrift provision of the will.

"* * * The Pennsylvania courts jealously uphold spendthrift trusts and see to it that the will of the testator is given effect as he expressed it. In re Bosler's Estate, 1954, 378 Pa. 333, 107 A.2d 443, 444. In the cited case the Supreme Court of Pennsylvania stated categorically that 'A life estate under a spendthrift trust will not coalesce or merge with an estate in remainder,' citing In re Moser's Estate, 1921, 270 Pa. 217, 113 A. 199." (252 F.2d at page 114).

The conclusion of Chief Judge Biggs was therefore that one-half of the trust

estate which passed to other remainder-men, and to which the life tenant's power to consume was limited by the good faith standard and by the spendthrift provisions, did not qualify for the marital deduction. In other words the widow did not possess a "general power of appointment" as to that one-half of the trust estate. (The other half went to her estate by the terms of the will).

A second case of the United States Court of Appeals for the Third Circuit which also applies the Pennsylvania law to a § 2056 situation is Hoffman v. Mc-Ginnes, 277 F.2d 598, (3rd Cir. 1960). Here again the Court considered the scope of the power to invade principal under a different set of testamentary directions. The Testator gave his wife "the right to use and spend any or all of the principal of my said estate, if she so desires, and upon her request or requests made to (trustees) they shall pay to her from time to time any part of the principal of my estate she may desire and said trust shall cease as to that part of the principal so paid to her. * * *."

The Court of Appeals (Kalodner, C. J.) said, 277 F.2d at p. 603:

> "It would be difficult, if not impossible, to state any more explicitly an intent to confer 'an unrestricted power exercisable at any time during her life to use all or any part of' the principal of the decedent's trust estate."

Judge Kalodner cites a number of Pennsylvania cases where the courts held the testator's intention to be that the beneficiary's demand was the sole requirement for invasion of principal.[4] In none of these cases is there any qualification, the beneficiary may use the proceeds for whatever purpose she sees fit, the trustee

has no discretion but to pay over whatever is demanded.

The cases fall into the classification described in Scott on Trusts, § 128.3, "Discretionary Trusts," p. 67:

> "In such a case the amount to which the life beneficiary is entitled depends wholly upon his own desires, and the trustee has no discretion to withhold."

The court in Hoffman v. McGinnes, supra, held that this power satisfied the requirements for the marital deduction. It distinguished the case from Commissioner v. Ellis, supra, by stating:

> " * * * Commissioner of Internal Revenue v. Ellis' Estate, supra, where it was held that a provision in the decedent's will authorizing the surviving wife's withdrawal from principal of such sums as she 'should require' did not vest in her a power of appointment, since under Pennsylvania law the surviving wife ' * * * under the terms of the will did not possess an "unlimited" power to invade the corpus or appoint the corpus to herself as unqualified owner', in view of the will's creation of 're-mainder' [252 F.2d 113] interests." 277 F.2d 598, at p. 600.

It may be of interest to note the hope of the Senate Finance Committee (supra) that:

> "[T]he most important consideration is to make the law simple and definite enough to be understood and applied by the average lawyer, and that the present bill will accomplish that purpose."

Not only the average lawyer, but the writers in the field of estate planning and estate taxation have placed a uniform construction on § 2041.[5]

---

4. Keen's Estate, 80 Pa.Dist. & Co.R. 377 (1951); Arrott's Estate, 36 Pa.Dist. & Co.R. 546 (1939); Estate of George M. Morriss, 26 Dauph.Co. 137 (1922).

5. "If the power of invasion is given to the trustee and not to the beneficiary, there are no estate or gift tax consequences to the beneficiary." Lifetime and Testa-

We are, therefore, of the opinion that the decedent, Edna Buhl Putts, did not possess at the time of her death a general power of appointment over the assets in the trust estate established under the will of her husband, B. Swayne Putts, held by the trustee, Security-Peoples Trust Company. We do not find that she held any power exercisable in her favor, or in favor of her estate, her creditors, or the creditors of her estate. We find that title and possession of the trust assets was in the hands of an independent corporate trustee, which under the law of Pennsylvania was legally accountable for its administration, not only to the decedent, but to successive life income beneficiaries and remaindermen. We find that the Trustee alone was vested with the discretion to make invasion of principal, which discretion had to be exercised reasonably, and solely for the benefit of the named beneficiaries, and with regards to the needs and the other available assets of such beneficiary, and with regard to the protection of interests of other future beneficiaries and remaindermen. The decedent had no power to make an appointment, gift, transfer or testamentary disposition of any part of the trust assets to herself or her estate, and the assets were protected from the pledge, encumbrance, sale, anticipation, debts and liabilities of decedent by the testator's spendthrift provision.

An appropriate order will be entered.

mentary Estate Planning in Pennsylvania, Edward M. Davis American Law Institute 1958 (p. 94).

(See also "Lifetime and Testamentary Estate Planning" Harrison Tweed and William Parsons, Am.Law Inst.)

"Therefore where it is intended that the principal of the trust may be invaded for the benefit of the income beneficiaries, the power to invade should be reposed in the discretion of those trustees who are not beneficiaries." 2 Polisher, Estate Planning and Estate Tax Saving, p. 494.

" * * * it is clear that giving the wife power over her husband's property will often result in income, gift and estate tax problems for her. Clearly, the surest way to avoid such problems is to name some other person trustee and to give the widow no powers over the husband's property." Andrew H. Cox "Income and Estate Tax Aspects of Surviving Spouse Beneficiary Serving as Executor-Trustee."; 22 Institute on Federal Taxation (p. 1041) New York University 1964. See also "Trusts in Estate Planning" by Sidney C. Winton, and Sherwin Kamin in Lasser "Estate Tax Techniques." Vol. 2, p. 1300.