Horace S. **MILLER, Jr.** and Isabel M. **Campbell, Co-Executors of the Estate of Isabella Steel Miller, deceased, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 66–188.

United States District Court W. D. Pennsylvania.

April 19, 1967.

Mitinger & Mitinger, Greensburg, Pa., for plaintiff.

Gustave Diamond, U. S. Atty., and Michael B. Arkin, Atty., Dept. of Justice, Washington, D. C., for the United States.

## OPINION

DUMBAULD, District Judge.

It is agreed by both parties that the solution to the problems presented by the case at bar is to be found in the principles set forth in Strite v. McGinnes, 330 F.2d 234 (C.A.3, 1964), and Security-Peoples Trust Co. v. United States, 238 F.Supp. 40 (W.D.Pa.1965). But, understandably, they differ as to the conclusion which those principles require with respect to the facts of the case at bar.

The question for determination is whether certain trust property is includible for estate tax purposes in the estate of the cestui que trust. A deficiency has been asserted and paid,

and suit brought here to recover the alleged overpayment.

The Government contends that decedent had a general power, taxable under 26 U.S.C. § 2041, to invade the corpus for her own benefit, unrestrained by "an ascertainable standard relating to the health, education, support or maintenance of the decedent." [1]

We must therefore see what powers, under Pennsylvania law, her husband's will gave her; and then determine whether those powers qualify, under the federal definition, as a general power *vel non*.

The *sedes materiae* is item FOURTH (b) of the will,[2] which empowers testator's wife and a Pittsburgh trust company, as co-trustees,

> "To make disbursements out of the principal of said Trust Fund to my said wife at such times and in such amounts as my said Trustees, in their discretion, shall deem necessary or expedient for her proper maintenance, support, medical care, hospitalization, or other expenses incidental to her comfort and well-being."

Item SECOND sets up a marital deduction trust, which, we are told, never took effect since the assets not passing under the will sufficed to exhaust the deduction. Appropriate language was used here to give the wife the income for life and power "to make disbursements out of the principal * * * to my said wife at such times and in such amounts as my said wife shall deem necessary and expedient" together with power to make testimentary disposition of the trust estate. In default thereof, the balance is to pass as part of testator's residuary estate under item FOURTH.

Under FOURTH (c), upon the wife's death, the balance of the residue is given to testator's son and daughter, to be paid in moieties upon attaining the age of thirty and thirty-five. FOURTH (d) provides for testator's grandchildren if his children die before distribution.

■ The object of Congress is to include in a decedent's estate, regardless of the gossamer distinctions which delight students of the writings of Lord St. Leonards and of John Chipman Gray about powers, special powers, powers in trust, and the like, all economic value which a decedent was in a position to divert to his own use if he desired.

■ The statutory definition was intended to embrace cases where the beneficiary's desires are controlling, and the trustee has no discretion to withhold. When the beneficiary may demand any amount *ad libitum*, and the trustee has no control over the matter, the property should be includible for estate tax purposes as part of the beneficiary's economic patrimony. 238 F.Supp. at 52.

For the definition in § 2041 to apply, however, it is clear that *the decedent* must have a power exercisable for his own benefit (i. e., in favor of himself, his estate, his creditors, or creditors of his estate). If the power in the case at bar had been vested wholly in

1. 26 U.S.C. provides: "§ 2041. POWERS OF APPOINTMENT
(a) *In General*—The value of the gross estate shall include the value of all property
\* \* \* \* \*
(2) Powers created after October 21, 1942.—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942,
\* \* \*
(b) Definitions.—For purposes of subsection (a)—
(1) *General power of appointment.*— The term 'general power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—
(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment."

2. Item FOURTH, *in principio* gives the residue of testator's estate to his wife and Fidelity Trust Company of Pittsburgh, in trust.

an independant trustee, there would have been no problem. 238 F.Supp. at 52–53.

However, when the widow was made a co-trustee, the Government may plausibly claim that she has a power which could under certain circumstances be used for her own benefit, and the mere fact that it is a power in trust is not sufficient to relieve her. 330 F.2d at 240. It is necessary to ascertain the scope, breadth, terms, and extent of the power in such a case, and to determine what, if any, limits there are to her ability to exercise the power in her own favor. Compliance with the statutory standards for exclusion contained in § 2041(b) (1) (A) therefore becomes controlling.

The words used are *"relating to* the health, education, support, or maintenance" of the decedent. (Italics supplied).

We stress the importance in this clause of the words "relating to". The words of § 2041(b) (1) (A) are not "talismanic"[3] in import, but refer to a general area of considerations which constitute justifiable reasons for invading corpus without adverse tax consequences.

In this connection it is well to be mindful of the admonition of Justice Holmes that courts "are apt to err by sticking too closely to the words of a law where those words import a policy that goes beyond them." Olmstead v. United States, 277 U.S. 438, 469, 48 S.Ct. 564, 575, 72 L.Ed. 944 (1928). On another occasion he pointed out that "it

is not adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before." Johnson v. United States, 163 F. 30, 32 (C.C.A. 1, 1908). Cf. Clayton v. Clayton, 3 Binn. 476, 491 (1811): *"sic voluit sed non dixit."*

Health and education are readily understandable; what the difference, if any, is between maintenance and support is not clear. In any event, they are narrower than "benefit" or "comfort". 330 F.2d at 239.

However, the mere fact that the testator in the case at bar used the word "comfort" at one place in FOURTH (b) does not *per se* fatally invalidate his clause.

He also uses the sacred statutory syllables "maintenance" and "support". Further, although he does not use the statutory term "health" he refers to "medical care" and "hospitalization". Surely these are proper objects; they *relate to* health.

The Government's contention in essence is that the additional words "or other expenses incidental to her comfort and well-being" are fatal.

We believe that the rule of *ejusdem generis* should apply. The meaning of the clause is the same as if it said "or *similar* expenses of the same general character" or if it said "or other expenses *incidental thereto*". The important word, we believe, is *"incidental"*. The extra power being conferred on the trustees is simply that of covering matters of like character, which were

3. This expression was used by Justice Frankfurter in City of Yonkers v. United States, 320 U.S. 685, 698, 64 S.Ct. 327, 334, 88 L.Ed. 400 (1944): "Is not insistence on such empty formalism a reversion to seventeenth century pleading which required talismanic phrases, as for instance that a seller could not be held to warrant that he sold what he purported to sell unless the buyer pleaded *warrantizando vendidit* or *barganizasset?*" Another example of such words is "to A and his heirs" which had to be used for the creation of a fee simple at common law. However, Justice Frankfurter was not unaware of the importance of words. In reply to a lawyer who had said "Oh, well, that's just a matter of semantics", he snapped: "Of course. All our work, our whole life, is a matter of semantics because words are the tools with which we work, the material out of which laws are made, out of which the Constitution was written. Everything depends on our understanding of them. So it's useless to say, 'Oh well, that's just a matter of semantics'." Garson Kanin, "Trips to Felix", in Felix Frankfurter: A Tribute, edited by Wallace Mendelson (1964) 41–42.

not spelled out specifically. "Medical care" might be thought by a meticulous bank lawyer to be limited to the field of internal medicine rather than surgery, or to exclude nursing care or drugs or apparatus such as a wheel chair or cervical collar. "Hospitalization" might be limited to institutionalized care, to the exclusion of nursing care in the patient's own home. Yet all these matters *relate* to health, or are *incidental* thereto.

In short, there seem to be legitimate reasons for using a customary catchall clause (not so devastatingly broad, of course, as the familiar "or otherwise") to make sure that other items of the same sort, and properly includible, though not specifically enumerated, were not ignored or excluded. The clause has a proper function from the standpoint of draftmanship which should not be penalized by tax consequences.

■ We therefore conclude that the trustees' power of invasion is limited by a suitable ascertainable standard relating to the health, support, or maintenance of the decedent, and that hence such power is not a general power as defined in § 2041, and the trust property is not includible in decedent's estate. Judgment is therefore rendered for the plaintiffs on the main question.

As to funeral expenses, it seems clear that these are deductible under the normal procedure provided in 26 U.S.C. § 2053(a)(2).

■ It is immaterial that item FOURTH (c) provides that "At the death of my wife, after payment of all funeral expenses, said [trustee is empowered] to distribute the balance of such fund as it may then exist, to my son * * * and my daughter * * * share and share alike." This incidental reference to funeral expenses does not make them a primary obligation of the trust so as to disqualify them for the usual deduction in the decedent wife's estate. Just as a tort-feasor is not entitled to collateral benefit if the injured party's hospital expenses are paid by an employer or relative,[4] the Government cannot rely on this provision in the husband's will to defeat the normal deduction in the wife's estate.

Disputes as to valuation of the trust assets, we are advised, have been settled by agreement of the parties.

Judgment is therefore entered for plaintiffs, the amount to be computed by the parties and submitted to the Court pursuant to paragraph 14 of the Stipulation.

## JUDGMENT

And now, this 19th day of April, 1967, upon consideration of cross motions for summary judgment, after trial and argument,

It is ordered that plaintiffs' motion for summary judgment be and the same hereby is granted; and that defendant's motion for summary judgment be and the same is hereby denied; and that

Judgment is entered in favor of plaintiffs, Horace S. Miller, Jr., and Isabel M. Campbell, co-executors of the Estate of Isabella Steel Miller, deceased, and against the defendant, United States of America, in an amount to be computed by the parties and submitted to the Court, approximately in the amount of $23,526.59, together with costs and interest from June 10, 1965.

4. See Hanover Shoe, Inc. v. United Shoe Machinery Corp., 185 F.Supp. 826, 829–830 (M.D.Pa.1960); "The Collateral Source Rule", 77 Harv.L.R. 741–53 (February, 1964).