## Wolters Estate.

Argued April 22, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Frank W. Hatfield,* with him *Robert W. Archbald, Jr.,* in propria persona, for Guardian and Trustee ad litem, appellant.

*Glenn C. Mead,* for Trustees, appellants.

*James Alan Montgomery, Jr.,* with him *Pepper, Bodine & Stokes,* for appellee.

OPINION BY MR. JUSTICE JONES, May 24, 1948:

The question raised by these appeals depends for its answer upon the intent and meaning of certain provisions of a deed of trust executed June 3, 1935, by Charles A. Wolters, as settlor, to The Pennsylvania Company etc. and George Ovington, Jr., as trustees.

The consideration specified in the trust indenture is one dollar and "for the purpose of settling the property herein mentioned upon the trusts herein declared . . . ". The trust was designed to provide Lillian Seixas (now Lewis) with monthly payments of $225 "for and during the full term of her natural life" out of income from the trust estate. The corpus of the trust, as originally deposited with the trustees upon the execution and delivery of the deed of trust, consisted of 3,000 shares of United Gas Improvement Company common stock. The motive for the creation of the trust was the settlor's desire to procure for his son, Carl J. Wolters, a complete release by Lillian Seixas from any and all claims and demands on her part against Carl and "more particularly any claim . . . whatsoever arising out of an alleged promise to marry or agreement of contract in the nature thereof between the said Carl A. Wolters and the said Lillian Seixas. . . ."[1] On the same day upon which the deed of trust was executed and delivered, to wit, June 3, 1935, Lillian Seixas executed and delivered the desired release, the consideration therein recited (in addition to one dollar) being the creation and delivery of the "trust agreement" above mentioned, a copy thereof being attached to the release and made part thereof. The trust agreement reserved to the settlor a power of appointment, after the death of Lillian Seixas, with respect to the residual trust principal and, in default of such appointment, directed the trustees to pay over the corpus of the trust estate to those entitled thereto under the intestate laws of Pennsylvania.

In case the income from the trust should prove insufficient for the payment of the monthly sums due the beneficiary, section "Fourth", subparagraph (f), of the trust indenture prescribed the following procedure:

"(f) In the event of the income from said fund being insufficient at any time to pay the sum of Two hundred

---

[1] The release incorrectly stated the middle initial of Carl's name as "A"; it should have been "J".

and twenty-five Dollars ($225.00) to the said Lillian Seixas, beneficiary, the Trustees shall upon her demand, make up such deficiency of income out of principal, provided that notice of such defiiency shall first be given to the Settlor and the Settlor have failed for a period of two months thereafter to make up such deficiency. Trustees shall after any deficiency in income shall occur, call upon the Settlor to make up such deficiency within two months after receipt of notice from the Trustees of such deficiency, Trustees shall have the right upon demand of the beneficiary, the said Lillian Seixas, to pay such deficiency in income out of principal. In the event of the Settlor failing to make up any deficiency in income within two months after receipt of notice thereof from the Trustees, Trustees shall call upon the Settlor to deposit additional securities with the Trustees hereunder to the amount of securities sold or appropriated for income purposes, it being the purpose of this Trust to provide an income of Two hundred and twenty-five Dollars ($225.00) per month to the said Lillian Seixas, beneficiary, for the term of her natural life, and to further provide that in the event of any deficiency of income Trustees shall make up any deficiency out of principal, at the demand of the aforesaid beneficiary, Lillian Seixas."

From June 1942 onward, the income from the trust estate was insufficient to pay in full the stipulated monthly sums due the beneficiary; and, as a result of appropriate compliance with the provisions of paragraph Fourth (f), as above quoted, the trustees invaded the corpus of the trust to the extent of $5,316.11 (being the value of the trust securities sold to make up deficiencies in income). In order to replenish the trust estate *pro tanto,* Mrs. Lewis, the beneficiary, filed a bill in equity against the settlor who died during the pendency of the suit. She thereafter filed a similar claim against the settlor's estate at the audit by the Orphans' Court of Philadelphia County of the account of the exec-

utors under his will. The claimant sought (1) an award to the trustees of the *inter vivos* trust in the amount of $5,316.11 for the rehabilitation of trust corpus, (2) an award to the same trustees out of the settlor's estate of a sum equal to the difference between $108,000 (the amount required to yield annually $2,700 on a two and one-half per cent basis) and the present value of the remaining corpus of the trust estate, and (3) if neither (1) nor (2) above was granted, the earmarking of a fund for the claimant's future protection or a charge in her favor against a testamentary trust created by the residuary clause of the settlor's will.

The auditing judge ruled that the *inter vivos* trust was entitled to reimbursement out of the settlor's estate to the extent of $5,316.11 for the restoration of corpus and also charged the decedent's residuary estate with a contingent liability for possible future deficiencies in trust income but denied the further relief sought. Exceptions filed to the adjudication and decree nisi of the auditing judge were dismissed, after argument, by a majority of the court en banc (two judges dissenting). The adjudication was thereupon confirmed absolutely and a final decree was entered approving the awards, contained in the Schedule of Distribution, of $5,316.11 to the trustees of the *inter vivos* trust and the residual balance of the decedent's estate to the testamentary trustees, "subject . . . to the contingent liability on the claim of Mrs. Lillian Seixas Lewis . . .". From that decree, the present appeals were taken,—one by the testamentary trustees of the trust created by the will of Charles A. Wolters, deceased, and the other by the guardian ad litem for Carl Paul Wolters, Jr., and trustee ad litem for any unborn child or children and issue of Carl J. Wolters.

The question presented by the appellants is whether the provision of paragraph Fourth (f) of the trust deed imposed an obligation upon the settlor, or his estate, to replenish the corpus of the trust to the extent that the

trustees have found it necessary to invade principal (after prescribed notice to the settlor) in order to make up the deficiencies in income required for the monthly payments to the beneficiary of the trust.

Actually, we need only inquire whether the settlor is so bound, for, if he is, then is his estate also bound. The deed of trust expressly provides that ". . . the terms [thereof] shall be strictly adhered to by his heirs, executors, administrators and assigns, . . .". Also, the trust deed must be interpreted in the light of the release for which it was the express consideration. As the learned auditing judge correctly observed,—"The release of Carl J. Wolters and the deed of trust are parts of one transaction, and grave error would result if they were considered independently and not together". They constitute legally enforceable instruments. Their execution and delivery antedated the effective date of the Act of June 22, 1935, P. L. 450, which abolished, inter alia, accrued causes of action for breach of promise to marry and voided, as contrary to public policy, all contracts and instruments executed within this Commonwealth in payment, satisfaction, settlement or compromise of a claim so abolished or barred by the Act.

Familiar principles applicable generally in the judicial construction of contracts or other obligatory writings are pertinent here. Thus, the intention of the creator of a trust is the guide primarily to be followed in interpreting the intended effect of the indenture: *Scott's Trust,* 322 Pa. 1, 16, 184 A. 245. As in the case of all contracts, the deed of trust is properly to be construed with reference to its subject-matter and purpose to which end resort to surrounding facts and circumstances may be had: *Hild v. Dunn,* 310 Pa. 289, 293, 165 A. 228. And, unless contrary to the obvious purpose of the instrument, force and effect are to be given to every provision thereof, whenever possible, so that the whole may be rendered effective and no part disregarded or treated as a nullity: *Moran v. Bair,* 304 Pa. 471, 475-476, 156 A. 81.

With these principles in mind, we reach the same conclusion as did the learned court below. The purpose of the trust was to provide a payment of $225 monthly to Lillian Seixas for the term of her natural life in extinguishment of her then legally cognizable claim against the settlor's son. The certainty of those payments was undoubtedly a matter of utmost importance to the beneficiary, especially, in view of her release which completely discharged the settlor's son from any liability to her. It was to guarantee certainty and security of the specified payments against the possibility of insufficiency of income from the trust corpus that paragraph Fourth (f) was inserted. If, upon such a deficiency, the trustees should duly invade corpus, as on certain conditions the indenture authorized them to do, it was to be the settlor's concomitantly accrued obligation to replenish the trust res *pro tanto.*

The appellants argue that the only right against the settlor in such regard was to "call" upon him merely by way of request or solicitation to make good the deficiency in the income and, failing that, to "call", with like ineffectual force, upon the settlor "to deposit additional securities with the Trustees . . . to the amount of securities sold or appropriated for income purposes . . .". If the word "call" means no more in the context than that the settlor was to have an election whether to make good the deficiency or let a portion of the trust res be sold, the provision was but an idle form so far as the beneficiary was concerned. But, such was not the evident intent of the parties; and the suggested construction is unwarranted. The word "call" may be used synonomously with "demand" in the sense of a legal obligation, particularly where need for the enforcement of the obligation is contingent or problematical and may never arise. One of the definitions of "call" given by Webster's International Dictionary, 2nd Ed., Unabridged, is,—"A demand for the payment of money; . . . [e. g., a demand] to pay an installment of sub-

scription to capital, or a *contribution toward certain losses*, etc., an *assessment*" (Emphasis supplied). See, also, *Taylor v. Coon*, 48 N. W. 123, 126, 79 Wis. 76, where the words "called upon to pay" were construed to mean "compelled or required to pay". In that case the Supreme Court of Wisconsin said that the construction, so given, made the agreement consistent and harmonious in all its parts which would not be so were the clause interpreted to mean "asked or requested or pressed to pay". The same may be as appropriately said with respect to the interpretation of the word "call" in the present instance. Such is, indeed, the true intent and purpose of the word "call" as the trust indenture otherwise confirms. Thus, paragraph Fourth (f) reckons with the settlor's "failing" to make up any deficiency in income after having been called upon so to do. Failing imports an idea of an inability or unwillingness to discharge an obligation. If there were no obligation, his refusal to comply could not properly be considered a *failure* to perform. Moreover, the purpose of the trust, as affirmatively recited in paragraph Fourth (f), was "to provide an income" sufficient to pay the specified monthly sums to the beneficiary for the duration of her life. It is obvious that a trust res which, by 1942, had become insufficient to produce the required income for the specified monthly payments would be so depleted by invasion as to be incapable of producing much, or any, income long before the life expectancy of the beneficiary, who was then forty-three years old, had expired.

The contention that paragraph Fourth (f) was inserted for the purpose of enabling the settlor to protect his reversionary interest in the United Gas Improvement Company stock constituting the trust res was effectively answered by the learned court below wherein it pointed out that the settlor, by the terms of the trust indenture, relinquished his right to determine the specific content or makeup of the trust res at any time.

Decree affirmed at the appellants' costs.