## Scholler Trust.

Argued November 21, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

98

reargument refused May 2, 1961.

*Alexander Brodsky,* with him *Harry E. Brodsky, Samuel B. Brodsky,* and *Brodsky, Brodsky and Brodsky,* and *Herbert Horn,* and *Lloyd, Horn, Megargee and Steedle,* of the New Jersey Bar, for appellant.

*Donald S. Cohan,* with him *Samuel B. Brenner,* and *Bernard A. Wecht,* for appellants.

*Philip A. Brégy,* with him *George M. Brantz,* and *MacCoy, Evans & Lewis,* for appellees.

*Lois G. Forer,* Deputy Attorney General, with her *Anne X. Alpern,* Attorney General, for Commonwealth as parens patriae.

OPINION BY MR. JUSTICE COHEN, March 23, 1961:
These are appeals from the decree of the Orphans' Court of Philadelphia County dismissing exceptions to an adjudication sustaining the charitable nature of a trust.

The Scholler Foundation was created by the inter vivos deed of trust dated June 22, 1939 of Frederick C. Scholler, who was unmarried and without issue. His five brothers had died without issue prior to 1939 and his only close relative, a maiden sister, died a year later. When the trust was created the settlor was, for all practicable purposes, the only shareholder of Scholler Brothers, Inc. which in turn owned Scholler Brothers, Ltd., a Canadian subsidiary, and

Trisco Products, Inc. (Scholler Corporations). The settlor served as president of the Philadelphia Textile Institute Foundation, vice-president of the LaSalle Foundation and a director of Northeastern Hospital.

The important provisions of the deed of trust can be summarized as follows:

The settlor first recited his desire "to create a fund, the income of which shall be used for the benefit of mankind; to set up a charitable entity to which I may ultimately transfer all my shares of stock in [the Scholler Corporations] . . ." so that the income derived from these shares and from other property added to the trust "will be used for the benefit of mankind. . . ." Therefore, in his words, he established, "a charitable trust to be known as The Scholler Foundation. . . ."

Under the next heading entitled "Transfer of Property" the settlor provided that "In furtherance of my general purposes above described," he was transferring certain assets to the trustees ". . . to pay and distribute the same for such of the following charitable purposes as the Trustees . . . shall determine. . . ."

The purposes are then described in the following paragraph: "In general, without in any way restricting the charitable purposes for which same may be distributed, for the alleviation of poverty and destitution, for the promotion of scientific research, including research in the various branches of chemistry, for assistance to persons under a physical disability, for enabling needy students to obtain college educations, for the benefit of colleges, universities, churches, hospitals, [and similar charities], and for such other charitable, (literary), [educational and public] purposes as in the discretion of the Trustees may seem desirable, the distributions, however, not to be limited geographically to the United States of America; (and *specifically for the purpose of providing hospitaliza-*

tion, medical care, and educational, literary, and recreational facilities for employees and/or former employees of Scholler Brothers, Inc. and/or Scholler Brothers, Ltd. and/or Trisco Products, Inc. and their families, and/or employees of any other corporation, a majority interest in the voting stock of which is subsequently acquired by The Scholler Foundation, or by Scholler Brothers, Inc., or Scholler Brothers, Ltd., or Trisco Products, Inc.)"[1] (Emphasis supplied)

There follow long provisions entitled "Covenants by Trustees" and "Powers of Trustees." The board of directors of his companies were made distinct from the trustees of the Foundation by requiring that after the settlor's death a majority of the trustees must be neither directors nor employees of the companies. Then, the deed of trust provided that increases in officers' salaries had to be approved by the trustees of the Foundation. The deed contains an elaborate formula for a limitation on bonuses paid to officers and employees. The trustees were required to vote for directors nominated by the existing board, provided that the nominations were in good faith. However, the trustees would not be bound by this requirement if the companies operated at a loss for two years or failed to pay prescribed dividends and, in addition, the directors could be removed for incompetence.

These sections of the deed also include a covenant not to sell any stock of a Scholler corporation except upon a two-thirds vote of the trustees and a majority vote of the directors of all Scholler corporations. Other covenants require that a Scholler corporation would not adopt or retain any bylaws which would contravene the provisions of the deed.

---

[1] The words subsequently deleted in a 1951 Amendment are placed in parentheses and the additional words subsequently deleted in the 1952 Amendment are placed in brackets.

The next section of the deed of trust, entitled "Revocability" states that, "This trust shall be irrevocable and none of the terms or provisions hereof may for any reason be altered, amended or revoked in any particular. . . ." The final section entitled "General Provisions" contains various miscellaneous provisions including the following severability clause: "The provisions of this Deed of Trust are severable, and if any of the provisions thereof shall for any reason be held to be invalid, such decision shall operate only to eliminate the particular invalid provisions, and the then remaining provisions of the Deed of Trust shall not in any manner be affected thereby."

The Scholler Foundation was classified by the Treasury Department, in a ruling dated February 19, 1947, as a bona fide charity created and operated "exclusively for charitable purposes" and hence entitled to exemption from taxation under the United States Internal Revenue Code. However, in 1951, when the trustees proposed to transfer to the Foundation the stock of Scholler Brothers, Ltd., a Canadian subsidiary of Scholler Brothers, Inc., they were required to obtain a charitable classification for the Foundation from the Canadian tax authorities. Application was made for such designation but the Canadian authorities questioned certain provisions of the trust under the heading "Transfer of Property." In particular, objection was made to the latter part of this section which referred to distribution in favor of employees of Scholler Corporations. In response to these objections the deed of trust was amended on August 17, 1951. A second amendment, which made further minor deletions to satisfy additional objections by the Canadian authorities, was adopted on March 17, 1952.[2]

---

[2] See excerpts from "Transfer of Property" provision, supra.

Scholler died on October 5, 1957 domiciled in New Jersey. By his will dated July 16, 1954 he left the residue of his estate to the Scholler Foundation.

In January 1959, persons claiming to be first cousins and heirs of the settlor filed a petition in the Orphans' Court of Philadelphia to compel the trustees to file an account, alleging that the trust was not charitable and violated the rule against perpetuities. The trustees filed an account and a hearing was held. Testimony was introduced over objections by the appellants, concerning, inter alia, the administration of the trust and the background of the amendments of 1951 and 1952.

After an adjudication sustaining the trust as charitable, the administrator ad litem and heirs filed exceptions which were dismissed by the court en banc. These appeals followed.

We are convinced that the court below was correct in its ruling that the settlor created a valid charitable trust. Since the intention of the settlor is the guide primarily to be followed in construing a deed of trust, *Scott's Trust*, 322 Pa. 1, 184 Atl. 245 (1936), we have scrutinized the entire record for evidence of such intent. An examination of the deed of trust shows that the settlor repeatedly used typical and traditional charitable trust phraseology. The use of the terms "charitable entity," "charitable trust," "benefit of mankind" and "betterment of mankind" are indeed strong evidence of his intent to establish a charitable trust. The detailed listing of the purposes for which he wished distribution made—almost all of which are unquestionably charitable—similarly reveals a dominant intent upon the part of the settlor to create a charitable trust. Since a court, in an effort to ascertain a settlor's intent, may look beyond the deed itself to contemporaneous circumstances, *Wolters Estate*, 359 Pa. 520, 59 A. 2d 147 (1948), our

conclusion is supported by evidence of the settlor's charitable propensities and the absence of close relatives and others who might qualify as the natural objects of his bounty.

The appellants contend, however, that the provisions in the "Transfer of Property" section for benefits to the employees of the Scholler Corporation nullifies the charitable nature of the trust.[3] Viewing these provisions in context we find that the settlor's desire to aid such employees is only subsidiary to his overall charitable intent. Thus, even if these allegedly non-charitable provisions were still present in the deed they would not nullify the trust since the settlor provided a severability clause specifically designed to preserve the charitable nature of the instrument. In addition, it is well settled that "where a valid charitable trust contains illegal or improper provisions for directions to the trustees, the law will strike down the unlawful direction to leave the primary intent untouched." *Manners v. Philadelphia Library Company*, 93 Pa. 165 (1880). See also Restatement (2d), Trusts §398(2) (1959) which endorses this position.

But the 1951 and 1952 amendments were nevertheless effectual to delete the questionable provisions from the deed of trust and to resolve any doubts as to the settlor's primary intent. Although the deed of trust was irrevocable and unamendable the two amendments were effective to *reform* the instrument. ". . . [W]here the settlor receives no consideration for the creation of the trust . . . a unilateral mistake is ordinarily a sufficient ground for a rescission, as it is in the case of an outright gift. It is immaterial that the bene-

---

[3] In *Oppenheim v. Tobacco Securities Trust Co.*, 1951 A.C. 297, and *In re Cox* (Canada 1953), 1 S.C.R. 94; aff'd 1955 A.C. 627, trusts for the benefit of employees of a single company only were stricken down by courts of the British Commonwealth.

104

ficiaries of the trust did not induce the mistake or know of it or share it. It is immaterial whether the mistake was a mistake of fact or a mistake of law. . . ." Scott, Trusts §333.4 (2d ed. 1956). Accord, Restatement (2d), Trusts §333 (1959).

In *Irish v. Irish,* 361 Pa. 410, 65 A. 2d 345 (1949), this court adopted the above position. There the settlor by inter vivos deed created an irrevocable trust for his children. There was no provision in the event that the settlor survived all of his children and that they failed to exercise the power of appointment given under the trust. Following *Spiegel's Estate v. Commissioner,* 335 U.S. 701 (1949), it was apparent that the trust would be taxable to the settlor. This was obviously contrary to his intent in establishing the trust and, therefore, we permitted the instrument to be reformed.

In the case at bar, the facts are similar since it was undisputedly the intent of the settlor to create a charitable foundation. The settlor, upon learning the language used in the deed might not be deemed to create a tax exempt charity under the laws of Canada, executed two amendments and, in the absence of objection by the beneficiaries represented by the Attorney General, they constitute a reformation of the deed.

The appellants maintain that the settlor's intent was not to reform the deed in order to have it conform to his original intent, but merely to obtain tax exempt status from the Canadian authorities. The evidence does not support this contention. An examination of the circumstances contemporaneous to the 1951 and 1952 amendments dispels any doubt as to the settlor's intent in regard to this matter. The settlor, who acted as a trustee prior to and during the period of the amendment, supervised the distribution of approximately one quarter of a million dollars in **gifts to recognized charitable** endeavors. The funds

of the Foundation never were expended for the benefit of the Scholler Corporations' employees.

In light of our determination that the settlor established a valid charitable trust, the rule against perpetuities has no application and the Attorney General and the courts of this Commonwealth have the sole responsibility of supervising the future operation of the trust.

Decree affirmed at appellants' costs.