**Hering  Trust**

*Morris H. Goldman,* of *Wolf, Block, Schorr & Solis-Cohen,* for accountant.

*J. H. Churchman,* for petitioner.

*Samuel S. Logan, Jr.* and *Samuel Fessenden* of *Montgomery,. McCracken, Walker & Rhoads,* for distribution committee of the Philadelphia Foundation.

KLEIN, Adm. J., April 11, 1972.—Walter E. Hering, the settlor, executed a deed of trust on December 15, 1924, in which he conveyed certain assets listed in Schedule "A" to Philadelphia Trust Company (now the Fidelity Bank). He subsequently conveyed additional assets to the trustee to form part of the trust res.

The reason for filing the present account is to obtain approval of all transactions made to date and to obtain authorization to distribute the income of the trust to the Philadelphia Foundation for the purposes set forth in the deed of trust.

All parties having or claiming any interest in the estate of whom the accountant has notice or knowledge are stated to have received written notice of the audit in conformity with the rules of court. Proof of compliance with Rule 5, sec. 5, of the Supreme Court-Orphans' Court Rules relating to notice to the Attorney General of the Commonwealth of Pennsylvania in cases involving charitable gifts, is annexed.

The Court of Common Pleas No. 3 of Philadelphia County has heretofore taken jurisdiction of the administration of this trust. Jurisdiction was transferred to the Orphans' Court by order dated September 12, 1966, pursuant to the provisions of section 301(3) of the Orphans' Court Act of 1951, as amended.

After providing for the distribution from income of specified amounts to certain individuals, all of whom are now deceased, the settlor directed in Item First of the deed, that the trustee pay the income:

". . . one-fourth thereof to the Trustees of the University of Pennsylvania, in trust, as to one-third of said one-fourth, to add the same to the Walter E. Hering Student Aid Fund, as to one-third of said one-fourth to apply the same to the purposes of the University Museum, and as to one-third of said one-fourth to apply the same to the increase of salaries of such professors and instructors as the Trustees may select, or to provide pensions for such professors and instructors; and to pay three-fourths thereof to the Trustees of Walter E. Hering Fund, for the charitable purposes to accomplish which those Trustees have been constituted by me under the terms of a document of even date herewith."

On December 15, 1924, the same day that he created the instant trust, Walter E. Hering, the settlor, executed another trust instrument, in which he created the Walter E. Hering Fund and designated trustees thereof. (A copy of this instrument is annexed to the record.) As authorized in that instrument, the trustees formed a nonprofit corporation under the title of Walter E. Hering Foundation. In the decree of incorporation dated August 20, 1941, entered by the Court of Common Pleas No. 6 of Philadelphia County, as of June term, 1941, no. 1349, the purposes as outlined in the instrument of trust were designated as the charitable

purposes of the foundation. The trustees of the Walter E. Hering Fund have been succeeded by the Walter E. Hering Foundation.

At the time the charitable fund was created by Mr. Hering, he owned a residence located in Abington known as "Lyndenwalt." He stated in the trust instrument that he intended to convey the property to the fund "for the establishment and maintenance thereat of a convalescent home." The instrument then set up rules and standards relating to the operation of the convalescent home. He also authorized the trustees to entirely abandon the plan of maintaining a convalescent home and to devote the income and the proceeds of the sale of the property "to any other philanthropic, educational or charitable purpose which they may deem wise, remembering first that it is my primary desire to assist the sick, and secondly that it is my desire to encourage homeopathic science."

The Walter E. Hering trust deed provided further that:

"Such action shall be taken only if six of the seven Trustees united in writing in a request to The Philadelphia Trust Company to make a change as herein provided for. The Philadelphia Trust Company shall have full power and authority to observe any requests made of it by the Trustees of Walter E. Hering Fund in accordance with this paragraph.

"The Trustees of Walter E. Hering Fund may if they abandon the plan, dissolve the corporation formed by them to conduct the home."

On March 16, 1942, the trustee, at the request of the trustees of the Walter E. Hering Foundation, sold Lyndenwalt and abandoned the plan of maintaining a convalescent home. Thenceforth, they devoted the income received by them from the trustee to general philanthropic, educational and charitable purposes.

The accountant takes the position that the primary purpose for the maintenance of the foundation no longer exists; that by the terms of the trust above quoted the trustees of the foundation are authorized to dissolve the corporation and to continue to devote the income received by it to philanthropic, educational and charitable purposes; and that it was the intention of the settlor that these purposes be carried out perpetually.

The trust in the instant case, like countless other charitable trusts in the United States, has been seriously endangered by the action of the Congress of the United States when it enacted the Tax Reform Act of 1969, amending the Internal Revenue Code. Under section 4947 of the code, the trust under deed of Walter E. Hering dated December 15, 1924, became a private foundation as defined in section 501(c)(3) of the code. The Tax Reform Act requires that the governing instrument be amended in certain respects, which would require reformation of the deed of trust. While this can be accomplished by decree of the Orphans' Court Division, the purpose of the settlor and the perpetual existence of the trust may nevertheless be adversely affected by the following provisions of the Internal Revenue Code which apply to "private foundations," namely:

1. Section 4940(a) which imposes on "private foundations" an excise tax of four percent on their net investment income; and

2. Section 4942, which establishes a minimum investment return which must be distributed to charitable and educational organizations and which could have the effect of requiring invasion of principal if the actual income is less than the minimum investment return prescribed by the act.

Because the objective of operating a convalescent

home has been abandoned, and because of the obligations of the Tax Reform Act of 1969, the trustees of the Walter E. Hering Foundation, by unanimous resolution, decided that the charitable purposes of the settlor would best be served and be given the greatest assurance of perpetual existence, if the trust income were to be distributed to the Philadelphia Foundation, a community foundation which operates as a public charity, not subject to the provisions of the Tax Reform Act of 1969.

The Fidelity Bank, by virtue of its adoption on June 7, 1957, of a certain resolution and declaration of trust, as amended, is authorized to "accept gifts, grants, devises or bequests in trust for charitable, scientific, cultural or educational purposes," subject to certain restrictions not herein pertinent, and to hold the same as a component part of the trust designated "The Philadelphia Foundation." Under the terms of the aforesaid resolution and declaration of trust, the trust funds made available to the Distribution Committee of the foundation must be distributed by the committee in accordance with the terms of the instrument creating the trust, if practical, or, in the discretion of the distribution committee, for the general purposes of the foundation.

The Fidelity Bank, as trustee, is in accord with the recommendation made by the trustees of the Walter E. Hering Foundation and, in effect, requests that the deed of trust of Walter E. Hering dated December 15, 1924, be reformed by the court so as to provide that the trust income be distributed under the auspices of the Philadelphia Foundation for distribution as to 25 percent thereof to the trustees of the University of Pennsylvania for the specific purposes designated in the deed of trust, and the balance of 75 percent among such philanthropic, educational and charitable insti-

tutions which the Philadelphia Foundation may deem wise, remembering that the settlor's primary desire is to assist the sick and to encourage homeopathic science.

In support of its position, the accountant cites Restatement, Trusts, 2d, sec. 381(d), which provides as follows:

*"Change of Circumstances.* The court will direct or permit the trustee of a charitable trust to deviate from a term of the trust if owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust; and in such case, if necessary to carry out the purposes of the trust, the court may direct or permit the trustee to do acts which are not authorized or are forbidden by the terms of the trust."

The Pennsylvania courts have always been solicitous of the predicament of settlors when events beyond their control endanger the purposes for which trusts were created. In Irish v. Irish, 361 Pa. 410 (1949), the settlor by inter vivos deed created an irrevocable trust for his wife, children and other relatives. There was no provision in the event the settlor survived all of the named beneficiaries and they failed to exercise the powers of appointment given under the deed of trust. Following Spiegel's Estate v. Commissioner, 335 U.S. 701 (1949), it was apparent that the trust would be taxable to the settlor. Since this was obviously contrary to his intent in establishing the trust, the Supreme Court permitted the instrument to be reformed to permit settlor to divest himself of the reverter interest. See also Scholler Trust, 403 Pa. 97 (1961), in which the court approved reformation of an irrevocable deed of trust setting up a charitable trust in order to correct

a unilateral mistake, even though the instrument contained a provision prohibiting amendments.

President Judge Taxis, of the Orphans' Court Division of Montgomery County, recognized the serious dilemma in which charitable trusts were placed as a result of the passage of the Tax Reform Act of 1969. In Smith Foundation, 21 Fiduc. Rep. 242 (1971), he approved the amendment of an inter vivos trust to conform to the provisions of the act in order to maintain its tax exempt status. He also set up a procedure under which such amendments could be made by the courts.

The Pennsylvania Legislature was also alerted to the gravity of the problem and by Act 23, approved June 17, 1971, provided for automatic amendment of trust instruments so that they will be deemed to have incorporated in them the provisions necessary to preserve their tax-free status. The act reads as follows:

"Section 1. The governing instrument of any charitable organization shall be deemed to include provisions, the effects of which are:

"(1) To require distributions for each taxable year in such amounts and at such times and in such manner as not to subject the organization to tax under section 4942 of the Internal Revenue Code of 1954; and

"(2) To prohibit the organization from engaging in any act of self-dealing (as defined in section 4941(d) of the Internal Revenue Code of 1954) and from retaining any excess business holdings (as defined in section 4943(c) of that code) and from making any investment in such manner as to subject the organization to tax under section 4944 of that code and from making any taxable expenditure as defined in section 4945(d) of that code, and such provisions shall supersede any contrary provision of the governing instrument. This section shall be applicable only to the extent that the

charitable organization is subject to one or more of the cited sections of the Internal Revenue Code of 1954.

"Section 2. For purposes of this act, the term 'charitable organization' means any corporation, trust, or other instrumentality governed by Pennsylvania law, including any trust described in section 4947(a)(1) of the Internal Revenue Code of 1954, which is or is treated as a private foundation under section 509 of that code.

"Section 3. References herein to the Internal Revenue Code of 1954 shall be deemed to extend to corresponding provisions of any subsequent Federal tax laws.

"Section 4. Nothing in this act shall preclude a court of competent jurisdiction from authorizing a deviation from the express terms of an instrument governing a charitable organization.

"Section 5. This act shall take effect immediately and shall apply:

"(1) Forthwith to every charitable organization created after December 31, 1969; and

"(2) After December 31, 1971, to every charitable organization created before January 1, 1970, unless a court of competent jurisdiction in a proceeding instituted before January 1, 1972, should explicitly decide that the operation of section 1 of this act would substantially impair the accomplishment of the purposes of the charitable organization involved in that proceeding.

"Section 6. This act shall be known and may be cited as the 'Charitable Instruments Act of 1971.' "

We will now address ourselves to the request made by the accountant that the trust instrument be reformed to permit the trust income to be distributed under the facilities of the Philadelphia Foundation. Will such delegation best conform to the intentions of

the settlor? Can the Philadelphia Foundation legally accept such responsibility? Does the court have the right to reform the trust instrument to this extent as requested? We think the answer to all three questions is in the affirmative.

A brief discussion of the nature of multi-trustee community trusts is in order. In Hilsberg Estate, 31 D. & C. 2d 686, 14 Fiduc. Rep. 47 (1963), this court reviewed at considerable length the functions of the Philadelphia Foundation and its relationship to the corporate trustees with which it is affiliated. We said, inter alia, at page 694:

"The Philadelphia Foundation is a permanent agency, formed jointly by the banks and trust companies of the Philadelphia area, to distribute funds placed in their hands for charitable, scientific, cultural and educational purposes. It is a multiple-trustee community trust similar to those being successfully operated in New York, Chicago, San Francisco, Pittsburgh, Cleveland and about 150 other cities in the United States.

"Its purpose is to make available to persons of charitable intent a permanent, yet flexible means of carrying out their objectives and perpetuating their gifts in spite of changing conditions from generation to generation. A donor may, either by gift or by will, name the Foundation as *beneficiary* and designate a bank of his own choice as *trustee.* Each bank, as trustee, invests and administers its own trusts in accordance with the directions given by the donor in his trust agreement or in his will . . .

"The multiple-trustee community trust plan is predicated upon the concept that a corporate fiduciary, experienced in financial matters and skilled in the administration of trust estates, shall act as trustee and an organization composed of outstanding civic leaders,

serving without pay, shall act as distributing agent of the proceeds of the trust."

Multiple-trustee community trust plans have served the cities in which they are located with distinction. They have earned the full confidence of the courts and the community and should be favored by the courts as a matter of accepted public policy. This is particularly true of the Philadelphia Foundation which has earned the respect and confidence of our citizens and our local courts during the years in which it has been in existence.

Mr. Goldman, counsel for the accountant, has submitted to the court a copy of a letter dated May 21, 1971, addressed to the Commissioner of Internal Revenue requesting a ruling with respect to the proposed reformation of the deed of trust of Walter E. Hering dated December 15, 1924; and copy of letter addressed to Jay L. Goldberg, Esq., by the Internal Revenue Service dated December 10, 1971, embodying the ruling of the Internal Revenue Service to the effect that on the assumption that the proposed transfer of assets to The Philadelphia Foundation is approved by this court and the trustee has not been guilty of any violation which would give rise to tax liability under the Internal Revenue Code, that the trust will not be subject to the taxes imposed by section 507(c) on private foundations and that it will not be subject to the tax on net investment income imposed by section 4940(a) of the code from the period beginning January 1, 1970, provided that the proposed transfer of assets is completed prior to the forty-fifth day after the last of the dates described in the ruling letter, none of which has yet taken place.

Mr. Goldman has informed the court that the effect of this ruling is to constitute the Hering trust a public charity, exempt from the four percent excise tax on

income and exempt from the other restrictions imposed upon private foundations, including the mandatory distribution provisions which may have the effect of invading the principal of the trust thereby threatening its perpetual existence, provided that the plan for utilizing the services of the Philadelphia Foundation is approved by the court. He has, therefore, requested that the adjudication of the court specifically provide that the deed of trust of Walter E. Hering, dated December 15, 1924, be reformed so that the Fidelity Bank, as trustee, be directed to hold the fund as part of the community trust known as "The Philadelphia Foundation" to be administered under the resolution and declaration of the trust of the Philadelphia Foundation, and only for purposes consistent with, and exclusively for, the charitable and educational purposes of the foundation, more specifically, the income to be distributed under the direction of the Distribution Committee of the Philadelphia Foundation 25 percent to the Trustees of the University of Pennsylvania, one-third thereof to be added to the Walter E. Hering Student Aid Fund, one-third thereof to be applied to the purposes of the University Museum, and the remaining one-third to be applied to the increase of salaries of such professors and instructors as the Trustees of the University of Pennsylvania may select, or to provide pensions for such professors and instructors; and the remaining 75 percent for charitable, philanthropic and educational purposes as the Distribution Committee of the Philadelphia Foundation may deem wise, with special consideration to the assistance of the sick and to the encouragement of homeopathic science.

The auditing judge is in complete accord with the request and heartily endorses and approves the proposed change in the manner of administering the trust.

There was no objection to the account which shows a balance of principal of $858,315.52 less additional counsel fee requested by Wolf, Block, Schorr and Solis-Cohen to which there was no objection 3,000.00 leaving a balance of $855,315.52 which is awarded to the Fidelity Bank, trustee under the deed of trust of Walter E. Hering dated December 15, 1924, which deed is to be reformed so that the Fidelity Bank, as trustee, is directed to hold the fund as part of the community trust known as "The Philadelphia Foundation" to be administered under the resolution and declaration of the trust of the Philadelphia Foundation, and only for purposes consistent with, and exclusively for, the charitable and educational purposes of the foundation, more specifically, the income to be distributed under the direction of the Distribution Committee of the Philadelphia Foundation 25 percent to the Trustees of the University of Pennsylvania, one-third thereof to be added to the Walter E. Hering Student Aid Fund, one-third thereof to be applied to the purposes of the University Museum, and the remaining one-third to be applied to the increase of salaries of such professors and instructors as the Trustees of the University of Pennsylvania may select, or to provide pensions for such professors and instructors; and the remaining 75 percent for charitable, philanthropic and educational purposes as the Distribution Committee of the Philadelphia Foundation may deem wise, with special consideration to the assistance of the sick and to the encouragement of homeopathic science.

The account shows a balance of income of $432,777.03, from which one-fourth of income accrued to October 1, 1970, is awarded to Trustees of the Uni-

versity of Pennsylvania for the uses and purposes declared in the deed of trust; three-fourths of income accrued to October 1, 1970, is awarded to Walter E. Hering Foundation; and the balance is awarded to the Philadelphia Foundation for the same purposes indicated in the award of principal.

All awards are subject to such distributions as have heretofore been properly made.

Leave is granted to the accountant to make all transfers necessary to effect distribution in accordance with this adjudication.

And now, April 11, 1972, the account is confirmed nisi.