**County Trust**

*Angus M. Russell,* for accountant.

*Edward H. P. Fronefield,* for life tenant.

*J. Scott Maxwell,* for grantor.

*Stanley F. Mankas,* trustee ad litem.

KLEIN, A. J., May 16, 1972.—The present account is stated to have been filed at the request of John Ormsby County, the income beneficiary, to resolve two questions which will be examined in detail hereinafter.

By indenture dated December 29, 1933, Hester Fraley County, settlor, who is living and 95 years of age, transferred to Girard Trust Company (now Girard Trust Bank), certain assets in trust and directed the trustee "to pay over the net income therefrom, but not exceeding Two Thousand Dollars ($2,000) per annum, in equal monthly installments as nearly as may be, unto John Ormsby County, son of Grantor, until the termination of the trust as hereinafter provided." Settlor provided further that, upon the death of the survivor and her husband, Albert County, who died August 20, 1944, "to pay over and distribute the corpus or principal of the trust hereby created, or so much thereof as may remain in the hands of Trustee, absolutely unto the said John Ormsby County, son of Grantor provided that, in the sole discretion of Trustee, said John Ormsby is competent to use and manage the same wisely."

Settlor also provided that on the death of John if there should be any principal remaining in the trust,

such principal should be paid "unto the surviving widow and/or children of the said John Ormsby County, issue of any deceased child or children to take their parent's share, per stirpes." Should no widow or issue survive, the principal was to be distributed to Albert John County or settlor, or to the appointees under the will of the second to die of settlor and her husband, Albert John County.

Settlor also provided that payments of income should begin after the trustee accumulated $2,000 cash, which cash should be kept on deposit in a savings account to be retained as a reserve from which should be paid deficiencies "in the amount directed to be paid to John Ormsby County in the sum of Two Thousand Dollars ($2,000) per annum or shall be used to meet emergency expenditures and surplus income over and above the sum of said Two Thousand Dollars ($2,000) per annum, if any, shall be added to the saving fund account so that at all times there will be an income reserve to permit Trustee to make regular payments."

Settlor reserved the power to terminate the trust with the written consent of John Ormsby County. By deed of release and assignment, dated January 18, 1946, settlor renounced her right to revoke and her power of appointment over principal and transferred to John Ormsby County "all of [her] right, title and interest, in and to the principal and income of the trust estate or any part thereof."

Two questions were submitted for adjudication at the audit.

First: John Ormsby County contends that the release and assignment executed by his mother, the settlor, dated January 18, 1946, confers upon him the power to revoke the trust in toto. The trustee and the other parties in interest deny that he has this right.

Second: The trustee and the other parties in interest take the position that under the terms of the indenture, the trustee is required to retain sufficient principal to assure the production of $2,000 annual income during the term of the trust. The son contends that the principal may be invaded for his benefit without regard to the possibility that the effect of such invasion will be to reduce the principal to an amount which may produce less than $2,000 annually.

By decree of this court dated September 27, 1971, Stanley F. Mankas, Esq., was appointed trustee ad litem for all unascertained parties who may be interested in the principal or income out of the trust estate. Mr. Mankas filed a written report in which he discussed the questions presented to the court for adjudication. He also recommended that the account be approved.

All parties in interest are stated to have received notice of this audit.

## RIGHT OF SON TO REVOKE TRUST

John Ormsby County, settlor's son, claims that he has the power to revoke the trust at this time by reason of the deed of release and assignment executed by his mother on January 18, 1946. We do not agree with this contention. In this instrument, after referring to the fact that her husband was dead, the settlor stated:

"WHEREAS, under the terms of said Indenture, the undersigned has reserved the power to revoke the trust thereby set up with the written consent of said John Ormsby County and has reserved a general power of appointment by will over certain of the principal of the trust, in the event that the Trustee in its discretion should not pay over to John Ormsby County all of the corpus or principal of the trust property upon the death of the undersigned, and John Ormsby County should

die leaving no widow or descendants surviving him, and the undersigned also has a contingent interest in the trust estate in the event that John Ormsby County should predecease her and leave no widow or descendants surviving him, as by reference to said Indenture will more fully and at large appear; and

"WHEREAS, the undersigned desires to renounce and release absolutely any and all right to revoke and to appoint under said powers or either of them, and also desires to assign, transfer and set over to John Ormsby County, absolutely, all of the undersigned's right, title and interest, in and to the principal and income of the trust estate or any part thereof.

"[Grantor] does hereby irrevocably release and renounce the said power to revoke the trust set up by said Indenture and the said general power of appointment by will reserved therein and does hereby assign, transfer and set over to John Ormsby County and his heirs, absolutely, all of the undersigned's right, title and interest, both vested and contingent, in and to the principal and income of the said trust estate or any part thereof."

We repeat the statement made by Chief Justice Bell in Burleigh Estate, 405 Pa. 373, 376 (1961):

"It is now hornbook law (1) that the testator's intention is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts . . ."

These same principles of construction apply with equal force to the interpretation of inter vivos trusts. See Scott's Trust, 322 Pa. 1 (1936); Wolters Estate, 359 Pa. 520 (1948).

The reason the 1946 deed of release and assignment

was executed by the settlor is crystal clear. Subsequent to the time the original deed was made in 1933, the Congress of the United States adopted the Internal Revenue Code of 1939 under the provisions of which the principal of the instant trust would have been included in settlor's gross estate for Federal estate tax purposes upon her death by reason of (1) her retention of a power of revocation (Code, §811(d)); (2) her general power of appointment, if exercised (Code, §811(f)); and (3) the possible reversionary interest which she had under the terms of the trust (Code §811(c)).

Countless persons who had previously created similar trusts found themselves facing an unexpected and perplexing dilemma. One of the purposes for which they created these trusts, namely, to relieve themselves of tax burdens, had been frustrated by the provisions of the 1939 Code. Upon advice of counsel, a great many trust instruments were amended to make certain that the trust assets would not be included in the gross estate for Federal tax purposes upon the settlor's death. This was obviously the situation in the present case.

Settlor stated specifically in the 1946 document that she desired (1) "to renounce and release absolutely any and all right to revoke and to appoint under said powers or either of them," and (2) "to assign, transfer and set over to John Ormsby County, absolutely, all of [her] right, title and interest, in and to the principal and income of the trust estate or any part thereof."

In short, she divested herself of her right to revoke, which she had retained under the deed, and her right to appoint thereunder. She also transferred any reversionary right she might have in the trust estate to her son. This is what she did; nothing more. By so doing, she relieved her estate from any possible estate tax liability.

There is clearly no merit in the position taken by settlor's son that his mother intended to convey to him her power to revoke and her power of appointment. The settlor obviously treated these two powers differently from the disposition of her contingent remainder. The powers were released outright by words of disclaimer which are inappropriate to a transfer to another person. On the other hand, the settlor used words of conveyance which are quite appropriate to transfer her right in remainder to her son.

Accordingly, the claim of John Ormsby County that he has the right to revoke the trust is denied.

## RETENTION OF PRINCIPAL TO ASSURE ANNUAL INCOME OF $2,000

There can be little question that the settlor was primarily interested in the welfare of her son, John, and that he was the chief object of her bounty and concern when she created the trust. It is equally clear, however, that she questioned his ability to manage his financial affairs and vested in the trustee the discretion to "apply directly so much of the corpus or principal . . . and of the net income therefrom as Trustee shall deem proper for the comfort, education, maintenance and support of said John Ormsby County or for his wife or issue or to meet the expenses . . . of any emergency . . ."

The account discloses that $48,683 has been distributed to John from principal and that the value of the principal as of the date of filing the account has been reduced to $38,624.56, which would have to earn in excess of five percent per annum to produce $2,000 in income.

The settlor's directions to the trustee with reference to the payment of income to John are clear and explicit. She provided that:

"Payments of income hereunder shall begin after

Trustee shall have accumulated income to the extent of Two Thousand Dollars ($2,000) in cash, which cash shall be kept on deposit by Trustee in a savings account in such company or companies as Trustee shall select, such accumulations to be retained as a reserve from which shall be paid deficiencies in the amount directed to be paid to John Ormsby County in the sum of Two Thousand Dollars ($2,000) per annum or shall be used to meet emergency expenditures and surplus income over and above the said sum of Two Thousand Dollars ($2,000) per annum, if any, shall be added to the saving fund account so that at all times there will be an income reserve to permit Trustee to make regular payments."

It seems evident that the settlor's primary intention was to assure her son an annual income of $2,000 to protect him against his own folly. In the opinion of the auditing judge, it is not only the trustee's right but also its duty to take every reasonable precaution to make certain that settlor's direction that her son receive the $2,000 annually is honored.

If there is any doubt that the trustee has the right to refuse to make further disbursements to John, it is laid to rest by the following provision in the trust indenture:

"In the event of any dispute between beneficiaries or distributees as to the proper distribution of principal or interest . . . the decision of Trustee shall be final."

A valid active trust may be created, placing in the discretion of a trustee the right to determine when and under what circumstances distribution of income and principal is to be made as a protection to the beneficiary because of his inexperience, improvidence, inability to manage his estate, or for any other proper purpose which the benefactor may deem wise or expedient to carry out her intentions. See Spring's Estate,

216 Pa. 529 (1907); Grazier's Estate, 301 Pa. 422 (1930).

The exercise by the trustee of its discretion to maintain the entire principal of $38,624.56 intact at this time to assure settlor's son of an annual income of $2,000 is fully justified under the circumstances of this case. Although this discretion is subject to review and control by the court, the court will not interfere with the exercise thereof except in cases of clear abuse. See Seacrist Estate, 362 Pa. 191 (1949), and the other cases cited in Hunter, Pennsylvania O. C. Commonplace Book, Vol. 6, pp. 29, 30. We are firmly of the opinion that the trustee has not abused its discretion in this case.

Although it does not in any manner affect our decision, it is interesting to note that the settlor, Hester Fraley County, who is now 95 years of age has, through her counsel, advised the court that she is in full agreement with the position adopted by the trustee in refusing to accede to the requests of her son.

Mr. Mankas has raised a question concerning the propriety of principal distributions for the benefit of William County, adopted son of John O. County. William County is the son of John's wife, Beatrice, by a prior marriage. We are satisfied that these were proper payments, since they were made at a time when William County was a minor, and must be regarded as having been made to John, who was legally responsible for the care and maintenance of his adopted child.

Mr. Mankas has requested allowance of $300 for his services as trustee ad litem, which amount conforms to the schedule of compensation adopted by this court, and it will be so allowed, to be charged against principal.

The account shows a balance of principal of ........................... $67,577.00

less compensation to Mr. Mankas for his
services as trustee ad litem ............ <u>300.00</u>
leaving .......................... $67,277.00
and a balance of income of ............ <u>2,895.43</u>
making a total of .................... $70,172.43
which is awarded to Girard Trust Bank, trustee, in trust for the continued uses and purposes declared in the deed of trust.

All awards are subject to such distributions as have heretofore been properly made.

Leave is granted to the accountant to make all transfers necessary to effect distribution in accordance with this adjudication.

And now, May 16, 1972, the account is confirmed nisi.