## Sutliff Estate

*William H. Wook,* for accountants.
*Ralph S. Snyder,* for objector.

SWOPE, P. J., August 7, 1974.—This matter is before us on objections to the first and final account of the personal representatives of the deceased, Ellis Sutliff. The objectant, Myrtle Sutliff, wife of the decedent, prays that the executors be surcharged in the amount of $19,335.80, plus interest from May 3, 1968, for the unjustified disbursement of funds from decedent's estate. Objectant further prays that said amount be added to the principal and distributed to the heirs of the estate. The personal representatives, Lula Laubach and the Commonwealth National Bank, argue that the contested expenditure was justified and that they should be credited for that amount. However,

the personal representatives do not question their liability to be surcharged if the court finds that said expenditure was unjustified.

Prior to his death, which occurred on December 15, 1963, decedent and L. E. Sutliff, they together holding the entire authorized and outstanding shares of the capital stock of Sutliff Enterprises, Inc., contracted with said corporation that "[u]pon the death of either Stockholder, all of the Stock of such Stockholder shall be purchased by the Corporation and shall be sold by the estate of the deceased Stockholder for a cash *price* equivalent to the *book value* thereof as of the end of the month preceding the month in which the death of the deceased Stockholder occurred. The determination of the *book value* shall be *conclusive* upon all parties. In determining the book value of Stock, no value shall be attributable to the goodwill of the Corporation; and an adjustment shall be made so as to show all real estate owned by the Corporation at its then fair market value . . . and an adjustment shall also be made so as to show all stock, bonds, and other securities of the Corporation at their then market value." The agreement also provided that "[t]he transfer of the Stock owned by the estate of the first Stockholder to die to the Corporation, and the payment by the Corporation of the purchase price therefore to the estate shall be *consummated* within one-hundred eighty (180) days after the appointment of a personal representative of the deceased Stockholder." (Emphasis added)

Pursuant to the stock purchase agreement, the 340 shares owned by decedent were sold to the corporation for a price of $914,776.80. Approximately two years later, the corporation received notice from the Federal Internal Revenue Service indicating the existence of tax deficiencies for the corporation for the

years 1962 and 1963. In March 1968, the tax deficiencies, with interest, totalling $29,005.72, were paid by the corporation. The corporation then reasoned that by virtue of this tax payment, the adjusted book value of the corporation as of November 30, 1963, was less than had been indicated by its accountant and that the corporation was, therefore, entitled to an abatement in the purchase price of decedent's shares in the amount of $19,335.80. This sum represented the aggregate reduction attributable to the adjusted book value of the 340 shares of its stock purchased from the executors pursuant to the aforesaid agreement. The executors determined that the claim was valid and, accordingly, paid to the corporation $19,335.80 on May 31, 1968, for "reimbursement readjustment of value Decedent's 340 shares of Sutliff Enterprises stock . . ."

In essence, the aforesaid transaction was merely an executed sale and purchase of corporate stock between an estate and a corporation with a subsequent abatement in price agreed to by the executors of the estate acting in the belief that said abatement was required by the agreement between the corporation and deceased. The objectant claims that said abatement was not required by the terms of the agreement and, therefore, should not have been granted.

In construing the terms of an agreement, several principles of law have evolved which serve to guide us. In this regard, the underlying principle, on which all others are based, is that the intention of the parties must govern: Mather Estate, 410 Pa. 361, 189 A. 2d 586 (1963); Betterman v. American Stores Co., 367 Pa. 193, 80 A. 2d 66 (1951); Waldman v. Shoemaker, 367 Pa. 587, 80 A. 2d 776 (1951). In order to ascertain the intention of the parties, the entire agreement must be examined, taking into consideration all rele-

vant factors, the nature of the agreement, the situation of the parties, the time when the contract was made, and the surrounding circumstances; Mather Estate, 410 Pa. 361, 189 A. 2d 586 (1963); Scholler Trust, 403 Pa. 97, 169 A. 2d 554 (1961); Wolters Estate, 359 Pa. 520, 59 A. 2d 147 (1948). Terms of doubtful meaning must be construed reasonably: United Refining Co. v. Jenkins, 410 Pa. 126, 189 A. 2d, 574 (1963). The law must look to what is clearly expressed and accept it upon the assumption that the language was not chosen carelessly: Moore v. Stevens Coal Co., 315 Pa. 564, 173 Atl. 661 (1934).

In the case at bar, neither the nature of the agreement nor the terms of the agreement could be construed to necessitate an abatement in the purchase price. The agreement executed by decedent and the corporation was a stock purchase agreement* as distinguished from a type of corporation liquidation agreement, for example, whereby the actual net worth of the corporation would be distributed among the shareholders according to their respective shares of ownership in the corporation.* Consequently, the concept of an exchange of stock for a "price" is involved herein rather than the concept of a distribution of equity value which by its inherent nature would be subject to readjustment upon discovery of unforeseen liability. In a case such as the one presently before us, involving as it does an exchange of stock for a "price," unanticipated factors affecting the value of the stock at the time of agreement as to price will not be taken to justify a readjustment thereof.

The very terms of the agreement likewise serve to

---

* The shareholders agreed to endorse their respective certificates of stock of the corporation to reflect the fact that the certificates were subject to a "Stock Purchase Agreement."

refute the contention that it was the intention of the parties thereto that the price of the stock was subject to change in response to subsequent events affecting its value. First, the agreement provided that the determination of the price by the accountant "shall be *conclusive* upon all parties." (Emphasis added) "Conclusive" means ending, final, decisive or not open to change. See Plum Township Annexation Case, 178 Pa. Superior Ct. 376, 116 A. 2d 260 (1955); Black's Law Dictionary, 4th ed. (1968). Thus, as evidenced by the use of the word "conclusive," the determination of the price by the accountant acting pursuant to the formula set forth in the agreement was to be final and not open or subject to change. Second, the agreement provided that an adjusted "book value" was to be used to determine the price. "Book value" has been defined in the case of Chaffee v. Murray, 492 S.W. 2d 680 (Tex. Civ. App.) at 684 (1973), as "the value shown by the books of the business and no other value; it means the value that is arrived at by taking the total value of the assets as shown by its books deducting therefrom the total liabilities." See Webster's New Twentieth Century Dictionary, 2d ed., vol. 1 (1964) at 209. Therefore, liabilities, such as unknown tax deficiencies, that were not shown on the books of the corporation were not intended by the parties to the agreement to affect the purchase price of the stock. Furthermore, the fact that the parties to the agreement recognized that book value does not necessarily reflect actual value is made clear by the fact that the agreement required certain specific adjustments to be made to the book value in order to insure that the price would more closely reflect actual value. If the parties intended possible tax liabilities to affect the purchase price, they could have easily provided for it. Third, the agreement provided that the purchase and sale of

the securities "shall be *consummated* within one-hundred eighty (180) days after the appointment of a personal representative." (Emphasis added)

Black's Law Dictionary, 4th ed. (1968) at 389, defines the word "consummate" as meaning "[t]o finish by completing what was intended; bring or carry to utmost point or degree; carry or bring to completion; finish; perfect; fulfill; achieve." Thus, the use of the word "consummated" by the parties to the agreement also supports the view that the sale of the stock made at the price determined by the accountant was to be final and not subject to subsequent change.

Taking into consideration the nature of the agreement and the intention of the parties as expressed by the terms thereof, we must agree with the contention of the objectant that the reimbursement of the amount in question to the corporation by the personal representatives was unjustified since it was not required by the agreement between decedent and the corporation. Therefore, we will surcharge the personal representatives in the amount of $19,335.80 and order that said amount be added to the principal and distributed to the heirs of the estate. Acting within our proper discretion, as provided in the Act of July 1, 1972, P. L. 421 (No. 164), 20 PS §3544, and being satisfied that justice and equity will not be served by creating additional liability for interest, we will make no order in this regard.

Accordingly, and in light of all of the foregoing, we make the following

## FINAL ORDER

And now, August 7, 1974, the objections of Myrtle Sutliff to the first and final account of Lula Laubach and the Harrisburg National Bank and Trust Company (now by merger the Commonwealth National

Bank), executors of the estate of Ellis Sutliff, deceased, are hereby sustained. The executors, each and severally are hereby surcharged in the amount of $19,-335.80, without interest, and further, said executors are hereby ordered to pay said amount forthwith into said estate to be added to the principal and distributed to the heirs of the estate.