**Mathey Trust**

*Angus M. Russell,* for petitioner.
*Richard L. Grossman,* for guardian and trustee ad litem.

TREDINNICK,*J.*, January 7, 1981—MacDonald Mathey, the settlor-beneficiary of an irrevocable intervivos trust, petitioned this court to reform the trust indenture. After hearing, the court entered a decree *nisi* granting the petition, thereby directing the trustee to pay to petitioner out of trust principal any Federal income tax liability which might be assessed against him because of capital gains achieved by the trust. The guardian and trustee ad litem, appointed to represent contingent remaindermen, filed exceptions asserting that neither the applicable law nor the record supports the decree. After argument before the court en banc, Taxis and Tredinnick, JJ., the matter is ready for disposition.

The facts are essentially undisputed. Petitioner was a beneficiary of a 1931 trust created by his father, Dean Mathey. Under the terms of the trust, he was to receive one-half of the principal of his trust on his 30th birthday, June 12, 1959, and the balance on his 40th birthday, June 12, 1969.

In 1955 petitioner's father, a successful banker, suggested that petitioner, then 25, place his anticipated inheritance in further trust because of petitioner's inexperience in managing investments. Petitioner agreed and on May 4, 1955 established an irrevocable trust, the res of which consisted of the principal balance of the 1931 trust which would otherwise have been disbursed to him on his 40th birthday.

The 1955 trust established the Empire Trust Company as trustee. The principal asset of the trust is 60,000 shares of Louisiana Land Development Company. The trust provides that income is to be distributed to petitioner and, upon his death, the principal be distributed to such persons as petitioner may designate by will. In default of his exercise of the power of appointment, the principal will

pass to his issue. Petitioner has two minor children, Roderic Montgomery Mathey and Heidi Ross Mathey. The guardian and trustee ad litem represents their interest and that of petitioner's unascertained issue.

The 1955 trust contains no authorization to distribute principal during petitioner's lifetime. Nor does it contain provisions defining "income" or allocating the burden of income taxes on capital gains. At the time of execution of the 1955 trust petitioner, as well as his legal advisors, assumed that all such taxes levied upon trust transactions would be paid from trust assets. Petitioner testified that had he known he would be personally liable for taxes attributable to trust capital gains, he would have insisted upon the insertion of a protective provision. Counsel did not inform petitioner of potential capital gains tax liability when reviewing the language of the trust instrument prior to its execution.

In 1960 petitioner created another trust which was funded with one-half of the share of the 1931 trust which petitioner was entitled to receive at the age of 30. Under the terms of the 1960 trust, petitioner receives the accrued trust income and a testamentary power of appointment over the principal. The trustees of this trust are expressly authorized to distribute principal to petitioner. The latter provision was included because petitioner felt that he might need the trust assets in an emergency.

Recently petitioner has had notice that the stock of Louisiana Land Company, the principal asset of the 1955 trust, was being sought by Placid Oil Company and that a cash offer to the stockholders of Louisiana Land Company was imminent. If the stockholders of Louisiana Land Company approve such an offer, the petitioner will be personally re-

sponsible for the capital gains taxes on the stock purchased by Placid Oil Company. The tax liability to petitioner will amount to approximately $800,000. Should he be required to meet that obligation, he would have to liquidate a substantial portion of his assets, including personal residences.

It is first necessary to review the status of the law in regard to the taxation of capital gains realized from trusts.* Under the Internal Revenue Code of 1939, the tax on capital gains realized in a trust was imposed on the trust principal itself. The grantor was required to report such gains as personal income only if the trust language specified that capital gains were to be distributed to the settlor in the discretion of a non-adverse trustee or were disposable by him inter vivos: Internal Revenue Code (1939), § 167(a)(2).

The Internal Revenue Code of August 16, 1954, 68A Stat 5, 26 U.S.C.A. § 1 et seq., modified the sections pertaining to the income taxation of trusts. Section 671 of this code states the general rule that a trust owner shall include in computing his taxable income those items of trust income to the extent that such items would be taken into account in computing taxable income of an individual.

Under section 674(a) of this code, the grantor is treated as the owner of any portion of a trust in which the grantor has a power, beyond specified limits, to dispose of the beneficial enjoyment of the income or corpus. The limitations on this rule are set forth in subsections (b), (c) and (d) of section 674. Under paragraph (3) of section 674(b), a power

---

*Taxation of the income of estates and trusts is governed by sections 641-83 of the 1954 Internal Revenue Code: 26 U.S.C.A. § § 641-683 (1954). In the 1939 code the relevant sections were 161 to 172: 26 U.S.C.A. § § 161-172 (1939).

in any person to control beneficial enjoyment exercisable only by will does not cause a grantor to be treated as an owner under section 674(a). However, this exception does not apply to income accumulated for testamentary disposition by the grantor or income which may be accumulated in the discretion of the grantor, without approval or consent of any adverse party.

At the time of execution of the 1955 trust, it was generally assumed among experts, that for the purposes of section 674, capital gains augmenting trust corpus were not considered "accumulated income." Although we do not know why the drafters of petitioner's trust did not discuss potential tax problems with petitioner or insert appropriate protective language in the trust instrument, they may have so assumed and thus reasoned that petitioner would not be responsible for capital gains taxes.

In 1958, three years after the trust had been executed, the Treasury Department issued regulations which discussed in detail the exceptions to section 674. Regulations § 1.674(b)-1(b)(3) states that "if a trust instrument provides that . . . the grantor has a testamentary power of appointment over the [corpus], and under the trust instrument and local law capital gains are added to corpus, the grantor is treated as the owner of a portion of the trust and capital gains and losses are included in that portion." This regulation obviously contradicted the previously held belief among experts.

Under these circumstances, was the court warranted in directing payment of capital gains taxes out of trust principal?

We note initially that the trust instrument specifically provides by Article Tenth thereof, that the trust is to be construed and regulated "in all re-

48

spects" by the laws of the State of New York. Petitioner asserts that whether construed under New York law or Pennsylvania law, the result should be the same—under the equitable powers of the court, the instrument may and should be reformed to grant the relief requested. Courts in both states have specifically so held. The New York Supreme Court in In Re Cowen, 151 N.Y.L.J. 16 (1964), directed the trustees to reimburse the beneficiary for the latter's trust-generated capital gains tax liability. The court noted that the primary intent of the trust agreement was to provide for the welfare of the beneficiary during her lifetime, a purpose which would obviously be at least partially frustrated were she burdened with tax on capital gains realized in the trust.

The present case is similar since it was indisputably the intent of the petitioner to create a trust for his own benefit. A court, in an effort to ascertain a settlor's intent, may look beyond the indenture itself to contemporaneous circumstances: Scholler Trust, 403 Pa. 97, 169 A. 2d 554 (1961); Wolters Estate, 359 Pa. 520, 59 A. 2d 147 (1948). Petitioner and his father were concerned about his ability to manage his assets. Petitioner was urged by his father to set up the trust for the protection such indenture would offer. The trust principal was placed beyond petitioner's reach solely for his own benefit.

The guardian and trustee ad litem incorrectly asserts that since petitioner is the beneficiary of another trust containing a principal invasion clause, the equitable principles present in the Cowen case do not apply. The 1960 trust was not in existence when the 1955 trust was created. Nor was the purpose of the 1955 trust changed when the 1960 trust was established. To require petitioner to pay the taxes concerned, from whichever source,

without benefiting from the capital gains upon which they are based, will result in the diminution of his personal assets and income. Therefore, if petitioner's request for reformation is denied, the entire management scheme upon which this trust is founded will be placed in jeopardy. The court in Cowen speaks in terms of the "pragmatic negation" of the trust purpose. Such would be the case here, if the relief requested were not granted.

The result in Pennsylvania would be the same: French Trust, 23 Fiduc. Rep. 296 (1963). In that case, Judge Shoyer stated (at page 306): "Equity . . . requires that although the Internal Revenue Code and Regulations impose upon the settlor-beneficiary the income tax liability on capital gains realized and retained by the trustee, the principal of the trust should be applied in relief of such tax."

Of course, whenever equitable principles are applied, the interests of all parties must be considered. Viewing the equities from the point of view of the settlor's children who, in default of the exercise of a power of appointment by settlor, would be entitled to the remainder, is a different result dictated? We think not. Although these children are probably among the natural objects of petitioner's bounty, he owes no obligation to his children to leave them any property: Sommerville Will, 406 Pa. 207, 177 A. 2d 496 (1962). The interest of these parties may be totally excluded by the exercise of the power of appointment. Therefore, the reformation will not significantly harm or alter these individuals' rights. Even if it did, they have no equitable claim to enhancement of the fund by the fortuitous circumstance that convoluted Federal taxation laws impose on the settlor a tax upon a capital gain realized by the estate. The government may look to one source for payment of a tax. As between the trust

and the settlor, however, clearly equity requires that the fund bear the ultimate responsibility for the tax.

Accordingly, we enter the following

## DECREE

And now, January 7, 1981, the exceptions are dismissed, and the decree nisi is entered as the final decree of the court.